10-2560-cv
Li v. Renaud

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

————————————

August Term, 2010

(Argued: May 12, 2011                                    Decided: June 30, 2011 )

Docket No. 10-2560-cv

————————————

FEIMEI LI, DUO CEN,

*Plaintiffs-Appellants*,

-v.-

DANIEL M. RENAUD, Director, Vermont Service Center, United States
Citizenship & Immigration Services, ALEJANDRO MAYORKAS, Director,
United States Citizenship & Immigration Services, ERIC H. HOLDER, JR.,
United States Attorney General, JANET NAPOLITANO,

*Defendants-Appellees*.

————————————

Before:  WINTER, POOLER, B.D. PARKER, *Circuit Judges*.

Plaintiffs-Appellants appeal the judgment of the District Court for the Southern District of New York (Marrero, *J.*), dismissing their complaint for failure to state a claim.  Plaintiffs-Appellants argue that the Child Status Protection Act, and in particular 8 U.S.C. § 1153(h)(3), entitles Duo Cen, an alien who aged out of eligibility for an immigrant visa as a derivative beneficiary to his grandfather's 1994 petition, to retain the 1994 priority date for his mother's 2008 family-sponsored petition for Duo Cen.  We disagree.  Section 1153(h)(3) does not entitle an alien to retain the priority date of an aged-out family preference petition if the aged-out family preference petition cannot be "converted to [an] appropriate category."  Affirmed.

————————————

Scott E. Bratton, Margaret Wong & Associates Co., LPA,
Cleveland, OH, *for Appellants*.

David Bober, Sarah S. Normand (*on the brief*), Assistant United States Attorneys, *for* Preet Bharara, United States Attorney, Southern District of New York, New York, NY, *for Appellees*.

Mary Kenney, Beth Werlin, American Immigration Council, Washington, DC, *for Amicus Curiae American Immigration Council and American Immigration Lawyers Association*.

Nancy Morawetz, Washington Square Legal Services, Inc., New York, NY, *for Amicus Curiae Mohammed Golam Azam*.

POOLER, *Circuit Judge*:

Plaintiffs-Appellants appeal the judgment of the District Court for the Southern District of New York (Marrero, *J.*), dismissing their complaint for failure to state a claim. Plaintiffs-Appellants argue that the Child Status Protection Act, and in particular 8 U.S.C. § 1153(h)(3), entitles Duo Cen, an alien who aged out of eligibility for an immigrant visa as a derivative beneficiary to his grandfather's 1994 petition, to retain the 1994 priority date for his mother's 2008 family-sponsored petition for Duo Cen. We disagree. Section 1153(h)(3) does not entitle an alien to retain the priority date of an aged-out family preference petition if the aged-out family preference petition cannot be "converted to [an] appropriate category." Because Plaintiffs-Appellants have specified no "appropriate category" to which Duo Cen's grandfather's petition could be converted, Section 1153(h)(3) does not entitle him to retain the 1994 priority date from his grandfather's petition.

## I.

### A.

In 1952, Congress enacted the Immigration and Nationality Act ("INA"), establishing the basic structure of today's immigration laws. Pub. L. No. 82-414, 66 Stat. 163 (1952). Three main features are relevant here. The Act (1) set a limit on the total number of immigrant visas available; (2) continued and codified the national origins quota system established by the Immigration Act of 1924, Pub. L. No. 68-139, 43 Stat. 153, which set maximum quotas for

-2-

immigrant visas based on the nation of the immigrant's birth (or, if the immigrant was part of "the Asia-Pacific triangle," based on the immigrant's race); and (3) established a family preference system that applied to each national origins quota category – 30% of each quota category was set aside for parents of United States citizens and an additional 20% of each quota category was set aside for spouses or children of lawfully admitted permanent residents of the United States ("LPRs"). Pub. L. No. 82-414, §§ 202-03, 66 Stat. 163, 176-79 (1952). Although brothers, sisters, sons, and daughters of United States citizens were not guaranteed quota slots, they did receive a preference for any unused quotas. *Id.* § 203(a)(4), 66 Stat. at 178-79.

In 1965, concerned about discrimination on the basis of "race, sex, nationality, place of birth, or place of residence," Congress repealed the national origins quota system. Act of Oct. 3, 1965, Pub. L. No. 89-236, § 2, 79 Stat. 911, 911-12. Instead, Congress substituted a generally uniform limit of 20,000 immigrants per year from any one country. *Id.*

Today, the INA specifies (1) a worldwide limitation on the total number of family-sponsored immigrant visas issued each year, 8 U.S.C. § 1151(c); (2) preference categories for certain types of family members of citizens and LPRs, *id.* § 1153(a); (3) numerical limitations on the number of family-sponsored immigrant visas in each family preference category, *id.*; and (4) a generally uniform limitation that natives of any single foreign state not constitute more than 7% of the visas granted to family-sponsored immigrants, *id.* § 1152(a)(2). Unlike other types of family-sponsored immigrants, immediate relatives of United States citizens are not subject to either the numerical limitations per country or the worldwide level of total visas granted per year. *Id.* § 1151(b). Moreover, additional visas are available for immigrants of countries that recently have sent few immigrants to the United States. *Id.* § 1153(c)(1)(B).

At all times relevant to this appeal, the INA provided the following family preference categories:

F1:  unmarried son or daughter of U.S. citizen

F2A:  spouses or children of LPR, where a child is an unmarried person under 21 (with some exceptions)

F2B:  unmarried son or daughter of LPR

F3:  married son or daughter of U.S. citizen

F4:  brother or sister of U.S. citizen

*See id.* § 1153(a).

Under the INA, a citizen or LPR who desires that a family member receive an immigrant visa must file a petition with the United States Citizenship and Immigration Services ("USCIS"). *Id.* § 1154(a)(1).  The citizen or LPR who files the petition is the petitioner and the sponsored immigrant is the primary beneficiary.  Generally, an immigrant cannot self-petition but must be sponsored by a family member who is a citizen or LPR.  If the sponsored immigrant – the primary beneficiary – has a spouse or child accompanying or following to join, that spouse or child is eligible to receive, as a derivative beneficiary, the same status as the primary beneficiary when the primary beneficiary receives her visa.  *Id.* § 1153(d).

When a citizen or LPR files a petition on behalf of an immigrant, USCIS determines whether the immigrant is qualified to be a beneficiary.  *Id.* § 1154(b).  Once the beneficiary is deemed qualified, USCIS approves the petition.  *See Drax v. Reno*, 338 F.3d 98, 114 (2d Cir. 2003); *accord Bolvito v. Mukasey*, 527 F.3d 428, 430 (5th Cir. 2008).

USCIS's approval of a petition does not automatically cause the agency to issue a visa or grant permanent lawful resident status to the beneficiary; instead, the beneficiary receives a place in line to wait for a visa.  *Bolvito*, 527 F.3d at 431 n.4.  Within preference categories, immigrant visas are issued to beneficiaries on a first-come-first-served basis, in order of the date the petition was filed (the petition's priority date).  Given the annual limitations on the total number of visas that may be granted for a particular family preference category – and on the number of natives of a single country who may receive visas – the waiting line to receive a visa often is

-4-

long.  The number of family preference petitions each year for visas for Chinese immigrants, for example, far exceeds the numerical limitations for each family preference category.  It is not uncommon for such immigrants to wait a decade or more after USCIS granted the petition to receive a visa.

**B.**

This regime, however, could have anomalous results.  Eligibility was determined on the date a visa became available, not when a petition was filed or approved.  Thus, before August 2002, an immigrant might have waited in line for a visa for years only to lose his or her spot.  The reason was that at the time a visa became available, an immigrant sponsored by a family member may no longer have been the spouse, child, or unmarried son or daughter of the petitioner.  If so, the immigrant was no longer eligible for a visa.

Child beneficiaries were especially affected by the long delays before a visa became available.  Many children "aged-out" of their status as a "child" – that is, after waiting years to receive a visa, they were no longer under 21 years of age, and thus were not eligible to receive a visa as a "child" of the petitioner.  *See* 8 U.S.C. § 1101(b)(1) (defining "child").

On August 6, 2002, Congress passed the Child Status Protection Act ("CSPA") to provide "age-out protection" to child beneficiaries.  Pub. L. No. 107-208, 116 Stat. 927 (2002) (codified at 8 U.S.C. §§ 1151(f), 1153(h), 1154(a)(1)(D), (k), 1157(c)(2), 1158(b)(3)).  As is relevant here, Congress focused on two separate periods of delay:  (1) the time between when a citizen or LPR sponsor filed a petition and USCIS granted the petition (USCIS processing delay); and (2) the time between USCIS's grant of the petition and the availability of a visa (waiting time because of INA's numerical limits per year).  For the first delay, Congress provided that the age of the immigrant on the date a visa became available would be reduced by the number of days the petition was "pending" before USCIS (i.e., before the petition was

granted or denied). 8 U.S.C.

§ 1153(h)(1). Thus, if USCIS took three years to grant a family petition filed when the child

beneficiary was 18 and a visa became available one year later, the beneficiary would be able to

receive the visa as a child beneficiary, despite the beneficiary's age (22) at the time the visa

became available. For the second delay, Congress allowed immigrants whose age remained

above 21 years old after subtracting the period of USCIS processing delay to receive the benefit

of other preference categories for which they were eligible, while retaining their spot in line

(their priority date). Congress provided that for such beneficiaries:

> the alien's petition shall automatically be converted to the
> appropriate category and the alien shall retain the original priority
> date issued upon receipt of the original petition.

8 U.S.C. § 1153(h)(3).

This appeal turns on the interpretation of this provision.

## II.

## A.

On June 6, 1994, Yong Guang Li, a lawful permanent resident of the United States, filed

a family preference petition naming his unmarried adult daughter Feimei Li as the primary

beneficiary. Feimei Li's 14-year-old child, Duo Cen ("Cen"), qualified as a derivative

beneficiary of Yong Guang Li's 1994 petition.

On April 4, 1995, the INS approved the 1994 petition for Feimei Li, its primary

beneficiary. The INS set a priority date of June 6, 1994. At the time the petition was approved,

Cen was 15 years old and thus remained a "child" for purposes of the INA.

Because of a significant waiting line for those in the F2B family preference category,

Feimei Li did not receive a visa until March 2005. At that time, Cen was 26 years old. **[*Id.*]**

Because he was no longer a "child" under the INA, he could not derive beneficiary status from

the 1994 petition.  Thus, Cen had "aged out" of derivative beneficiary status before he could be granted a visa on that ground.

Three years later, on April 25, 2008, Feimei Li, a lawful permanent resident, filed a family preference petition naming Cen, her unmarried adult son, as the primary beneficiary.  In a cover letter that accompanied the 2008 petition, Feimei Li requested a priority date of June 6, 1994.  Feimei Li argued that Cen was entitled to the priority date of her father's 1994 petition, under which Cen was a derivative beneficiary before aging out.

USCIS approved Feimei Li's 2008 petition on August 7, 2008.  However, USCIS established the priority date as April 25, 2008, rather than the 1994 date requested by Feimei Li.  If USCIS had given the petition a 1994 priority date, Cen would have received a visa immediately.  However, because the petition was given a 2008 priority date, the Department of State estimates that based on current processing times Cen will have to wait until 2017 for a visa.

**B.**

On September 4, 2008, Feimei Li and Cen filed suit, alleging that USCIS misinterpreted a provision of the Child Status Protection Act, codified at 8 U.S.C. § 1153(h)(3), in setting the priority date for Li's 2008 petition.  Feimei Li and Cen sued the director of USCIS's Vermont Service Center, the acting director of USCIS, the U.S. Attorney General, and the secretary of Department of Homeland Security ("DHS") (collectively, "Defendants").  Defendants moved to dismiss the complaint for failure to state a claim, arguing that neither Feimei Li nor Cen had a statutory right to have Feimei Li's 2008 petition receive a 1994 priority date.

On April 27, 2010, the district court granted Defendants' motion to dismiss.  Applying the two-step framework articulated by *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), the district court first found that Section 1153(h)(3) was ambiguous because it "does not explicitly articulate which petitions qualify for [automatic conversion and

priority date retention].” *Feimei Li v. Renaud*, 709 F. Supp. 2d 230, 237 (S.D.N.Y. 2010). The district court then deferred to the BIA's interpretation of Section 1153(h)(3) in *Matter of Wang*, 25 I. & N. Dec. 28 (BIA 2009), because it found such interpretation reasonable. *Feimei Li*, 709 F. Supp. 2d at 241.

In *Wang*, the BIA held that “automatic conversion,” as the term is used in Section 1153(h)(3), means an automatic change in beneficiary classification “without the need to file a new visa petition.” *Wang*, 25 I. & N. Dec. at 34-35. The BIA relied on “the relevant provisions of 8 C.F.R. § 204.2(i), which have been in effect since 1987, [and which] provide for the ‘automatic conversion of preference classification’ from one preference category to another upon the occurrence of certain events.” *Id.* at 34. Similarly, and based on 8 C.F.R. § 204.2(a)(4), the BIA construed the word “retention” to apply only to “visa petitions filed by the same family member.” *Id.* at 35. Accordingly, the BIA held that the automatic conversion and priority date retention provisions of Section 1153(h)(3) do not apply to an alien who ages out of eligibility for an immigrant visa as a derivative beneficiary, and on whose behalf a second family preference petition is later filed by a different petitioner. *Id.* at 38-39.

Feimei Li and Cen timely appealed the district court's dismissal of their complaint. Because Cen does not challenge the district court's dismissal of his complaint for lack of standing, the argument is waived and his appeal is dismissed on that issue. *See, e.g.*, *In re Wireless Data, Inc.*, 547 F.3d 484, 492 (2d Cir. 2008) (argument not raised on appeal is waived).

### III.

### A.

Feimei Li argues that her son Cen “should have been assigned a priority date of 1994 rather than 2008 under the Child Status Protection Act.” As relevant here, the CSPA provides partial relief for child beneficiaries from both USCIS processing delay and the time they must

wait to receive a visa. For the first such delay, 8 U.S.C. § 1153(h)(1) subtracts from a child

beneficiary's age the time during which the applicable petition was pending:

> For the purposes of subsections (a)(2)(A) [spouses and children of lawful permanent residents] and (d) [derivative beneficiaries] of this section, a determination of whether an alien satisfies the age requirement [as a child] shall be made using –
>> (A) the age of the alien on the date on which an immigrant visa number becomes available for such alien (or, in the case of subsection (d) of this section, the date on which an immigrant visa number became available for the alien's parent), . . . ; reduced by
>> (B) the number of days in the period during which the applicable petition described in paragraph (2) was pending.

*Id.* § 1153(h)(1). As specified by Section 1153(h)(2), this calculation applies to certain types of

pending petitions:

> (A) with respect to a relationship described in subsection (a)(2)(A) of this section [spouses and children of lawful permanent residents], a petition filed under section 1154 of this title for classification of an alien child under subsection (a)(2)(A) of this section; or
>
> (B) with respect to an alien child who is a derivative beneficiary under subsection (d) of this section, a petition filed under Section 1154 of this title for classification of the alien's parent . . . .

*Id.* § 1153(h)(2).

This calculation applies to Cen, who was a derivative beneficiary of his grandfather's

1994 petition for classification of Cen's mother, Feimei Li. However, the parties agree that

because the 1994 petition was pending before USCIS for less than one year, and a visa became

available only when Cen was 26, Cen's age for purposes of Section 1153 remains over 21 years

old despite the calculation.

Therefore, Feimei Li's appeal centers on Section 1153(h)(3), which allows certain

beneficiaries to retain the priority date of a petition of which they have aged out while waiting

for a visa to become available.  In particular, Section 1153(h)(3) provides that:

> If the age of an alien is determined under paragraph (1) to be 21
> years of age or older for the purposes of subsections (a)(2)(A) and
> (d) of this section, the alien's petition shall automatically be
> converted to the appropriate category and the alien shall retain the
> original priority date issued upon receipt of the original petition.

*Id.*

Feimei Li principally argues that the 1994 petition by her father, Yong Guang Li, of

which her son Cen was the derivative beneficiary, should "automatically convert" to a different

petition – the 2008 petition by Feimei Li for Cen as an unmarried son – and that Cen should be

allowed to retain the original priority date of her father's 1994 petition.  Feimei Li acknowledges

that Cen was not eligible as a beneficiary under another category of her father's 1994 petition

because the INA lacks a family preference category for grandchildren.  However, Feimei Li

argues that this provision, like "many other sections of immigration law," "permit[s] conversion

and retention of a priority date where the petitioner is not the same."

Amici curiae American Immigration Council ("AIC") and the American Immigration

Lawyers Association ("AILA") offer a second interpretation of Section 1153(h)(3) that would

allow Cen to retain the 1994 petition's priority date.  AIC and AILA argue that automatic

conversion and retention of priority dates "are distinct and independent benefits."  Therefore,

because Cen was a derivative beneficiary to Yong Guang Li's petition, but then aged-out, Cen

can "retain" that priority date to use for a future petition listing him as a beneficiary.

The Government disputes both Feimei Li's and amici curiae's interpretations.  Instead,

the Government argues that Section 1153(h)(3) is ambiguous and this Court should defer to the

BIA's interpretation of the provision in *Matter of Wang*, 25 I. & N. Dec. 28 (BIA 2009).

**B.**

**1.**

We first consider what weight to accord the BIA's interpretation of Section 1153(h)(3) in *Wang*. Pursuant to its delegated authority, the BIA interpreted the INA in a formal adjudication. *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 424-25 (1999) (Congress delegated the BIA the authority to interpret the INA). Therefore, we evaluate the BIA's interpretation according to *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). *See United States v. Mead Corp.*, 533 U.S. 218, 229-30 (2001) (specifying when *Chevron* deference is appropriate).

Pursuant to *Chevron*, we first determine "whether Congress has directly spoken to the precise question at issue." 467 U.S. at 842. If so, "that is the end of the matter" because this Court "must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. In evaluating whether Congress has directly spoken to the issue, a reviewing court must first exhaust the "traditional tools of statutory construction." *Id.* at 843 n.9. "If, in light of its text, legislative history, structure, and purpose, a statute is found to be plain in its meaning, then Congress has expressed its intention as to the question, and deference is not appropriate." *Arizona Pub. Serv. Co. v. EPA*, 211 F.3d 1280, 1287 (D.C. Cir. 2000) (internal quotation marks omitted); *see also Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 600 (2004) ("[*Chevron*] deference to [an agency's] statutory interpretation is called for only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent."). If, instead, congressional intent is ambiguous after exhausting the traditional tools of statutory construction, the reviewing court must then determine whether the agency's construction is reasonable. *Chevron*, 467 U.S. at 844.

Here, the district court found that Section 1153(h)(3) was ambiguous because "it refers

-11-

only vaguely to 'petitions' that qualify for automatic conversion and Priority Date retention, but does not explicitly articulate which petitions qualify for this favorable treatment." *Feimei Li*, 709 F. Supp. 2d at 237. However, an alleged ambiguity in some part of the statutory provision at issue does not end the inquiry. Even absent "explicit[] articulat[ion]" of all components of a statutory provision, *id.*, a reviewing court must still ask whether Congress has spoken to "the precise question at issue" in the case. *Chevron*, 467 U.S. at 842. Here, the "precise question at issue" is whether a derivative beneficiary who ages out of one family preference petition may retain the priority date of that petition to use for a different family preference petition filed by a different petitioner.[1] Applying the traditional tools of statutory construction, as explained below, we find that Congress's intent on this point was clear. Section 1153(h)(3) does not entitle an alien to retain the priority date of an aged-out family preference petition if the aged-out family preference petition cannot be "converted to [an] appropriate category." Therefore, deference to the BIA's interpretation of Section 1153(h)(3) is not appropriate in this case.

**2.**

As an initial matter, we reject amici curiae AIC and AILA's argument that automatic conversion and retention of priority dates "are distinct and independent benefits" provided by Section 1153(h)(3).

The text of Section 1153(h)(3) belies this interpretation. The provision has a relative simple sentence structure: If X, [then] A *and* B. As relevant here, if the alien's age as calculated without USCIS processing delay is 21 years or older, then "[A] the alien's petition shall

---

[1] Amicus curiae Mohammed Golam Azam urges this panel to limit our opinion to the context of family preference petitions, without opining on the applicability of Section 1153(h)(3) to employment petitions. The Government agrees, noting that this issue is not relevant to this case and was not raised before the district court or in the parties' briefs to this Court. We, too, agree and leave the issue for another day.

automatically be converted to the appropriate category *and* [B] the alien shall retain the original priority date issued upon receipt of the original petition." 8 U.S.C. § 1153(h)(3) (emphasis and bracketed numbers added). Although in some situations we can read "and" to mean "or," Section 1153(h)(3) was structured to avoid that result in this case. Congress could have, but did not, provide beneficiaries the option to select *either* conversion *or* retention *or* both. Instead, Congress specified both an automatic conversion to a different category and a retention of the original priority date.

Other provisions in the CSPA – which enacted Section 1153(h)(3) – indicate that Congress intended to structure Section 1153(h)(3) as "If X, [then] A and B." For example, Section 6 of the CSPA, codified as 8 U.S.C. § 1154(k), separates the conversion and retention benefits so that a beneficiary could choose whether or not to convert the petition. This provision allows a beneficiary to avoid a conversion that would place them in a longer line to receive a visa. Under prior law, when a sponsoring parent of an adult son or daughter naturalized, the petition was converted from F2B (adult son/daughter of LPR) to F1 (adult son/daughter of citizen) – a conversion that at the time forced sons and daughters of Phillipine parents to wait in a longer line to receive a visa. H.R. Rep. No. 107-807 at 55-56 (2003). CSPA "fixe[d]" this "troubling anomaly in the immigration law." *Id.* In general, if an LPR petitions for her unmarried son or daughter (an F2B petition), and the LPR later becomes a citizen before the son or daughter receives a visa, then the petition "shall be converted" to a petition for an unmarried son or daughter of a citizen (an F1 petition). 8 U.S.C. § 1154(k)(1). However, Section 1154(k)(2) explicitly provides that a beneficiary in that situation may "elect[] not to have such conversion occur (or if it has occurred, to have such conversion revoked)." *Id.* § 1154(k)(2). As the next paragraph in Section 1154(k) makes clear, "[r]egardless of whether a petition is converted under this subsection or not," such a beneficiary "may maintain" the priority date

associated with the original petition.  *Id.* § 1154(k)(3).

Thus, in Section 1154(k), Congress chose to make conversion and retention distinct and independent benefits.  Congress did so with language appropriate for such a purpose, specifying that conversion is optional and may be revoked, and that a beneficiary may maintain the original petition's priority date regardless of whether the petition is converted.  *Id.* §§ 1154(k)(1)-(3).  In contrast, Congress chose to require both conversion and retention in Section 1153(h)(3).  Congress was aware of the possibility of making the benefits "distinct and independent" and we cannot assume that Congress unintentionally failed to do so.  In the same statute, passed on the same day, Congress chose to couple conversion and retention in one context and decouple the benefits in another context.  We cannot ignore Congress's clearly expressed intent.

**3.**

Because Section 1153(h)(3) requires both automatic conversion to the appropriate category and retention of the original petition's priority date, we must decide whether such conversion was possible in this case.

The text of Section 1153(h)(3) requires that a petition automatically be "converted to the appropriate category."  This phrase rules out "converting" Li's petition naming Cen as a derivative beneficiary into Feimei Li's petition naming Cen as an unmarried son of an LPR.  Such a change would not be a conversion "to the appropriate category."  As used in the CSPA and prior regulations, the phrase conversion to an appropriate category refers to a petition in which the category is changed, but not the petitioner.  For example, 8 C.F.R. § 204.2(i) lists three types of situations in which a petition will convert from one category to another – change in marital status, attainment of age 21, and petitioner's naturalization.  *Id.* §§ 204.2(i)(1)-(3).  For each, the petitioner stays the same and the beneficiary is able to take advantage of a different category.  The same is true for the CSPA.  Each time the Act uses the word "conversion" it

-14-

describes a change – without need for an additional petition – from one classification to another, not from one person's family-sponsored petition to another. *See* CSPA, Pub. L. 107-208, § 2(f)(2), 116 Stat. 927, 927 (2002) (codified at 8 U.S.C. § 1151(f)(2)) (conversion from F2A to immediate relative petition); *id.* § 2(f)(3) (codified at 8 U.S.C. § 1151(f)(3)) (conversion from F3 to F1 or from F3 to immediate relative petition); *id.* § 6(k)(1) (codified at 8 U.S.C. § 1154(k)(1)) (conversion from F2B to F1). Section 1153(h)(3) is explicit on this point, specifying that the conversion is "to the appropriate category," not to a different family-sponsored petition by a different petitioner.

Feimei Li also argues that "many other sections of immigration law permit[] conversion and retention of a priority date where the petitioner is not the same." However, the statutory language Feimei Li cites is meaningfully different than the language of Section 1153(h)(3). Feimei Li is unable to cite a statutory provision or regulation that uses the term "convert[] to the appropriate category" – or any form of the word "convert" – with respect to petitions filed by different petitioners. For example, Feimei Li cites 8 C.F.R. § 204.5(e), which deals with "the event that the alien is the beneficiary of multiple [employment-based] petitions" and provides that "the alien shall be entitled to the earliest priority date." Nowhere in the regulation is the word convert mentioned – nor is it needed, since the beneficiary simply is able to use the earliest priority date. *See also* 8 C.F.R. § 204.12(f)(1) (allowing alien doctor working in medically-underserved area who changes jobs to retain priority date of prior employer's petition).

In addition, Feimei Li cites instances in which immigrants are allowed to self-petition. One example is when an alien is a beneficiary to a petition filed by an abusive spouse or parent. To prevent the abusive party from using the immigration benefit to coerce and threaten the beneficiary, victims of abuse may self-petition and use the earlier priority date for the self-petition. *Id.* § 204.2(h)(2). The specific language used in the regulations is "transfer the visa

petition's priority date to the self-petition." *Id.* This language expresses a different intent than Section 1153(h)(3), which provides for a "conversion" "to the appropriate category" and "retention" of the priority date. Because we must give effect to Congress's unambiguously expressed intent, we cannot ignore the meaningful differences between the language quoted by Feimei Li and the language that Congress used in Section 1153(h)(3).

In sum, the phrase "convert[] to the appropriate category" is a required part of Section 1153(h)(3) and does not encompass transformations of a petition filed by one family sponsor to a petition filed by another family sponsor. For Yong Guang Li's 1994 petition, there is no "appropriate category" to which to convert Cen, who was a derivative beneficiary of that petition, as Yong Guang Li's grandson. Because there is no family preference category for grandchildren of LPRs, and Cen has not specified a category that would be appropriate, Cen cannot be converted to an "appropriate category" with respect to his grandfather's petition. Therefore, Cen is not eligible under Section 1153(h)(3) to retain the 1994 priority date of his grandfather's petition. Accordingly, the district court did not err in dismissing Feimei Li's complaint for failure to state a claim.

## IV.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.