M. SMITH, Circuit Judge,
with whom KOZINSKI, Chief Judge, and McKEOWN, W. FLETCHER and RAWLINSON, Circuit Judges, join, dissenting:
The statutory provision at issue in this case, 8 U.S.C. § 1153(h), “is far from a model of clarity.” Robles-Tenorio v. Holder, 444 Fed.Appx. 646, 649 (4th Cir.2011). The Second Circuit recently held that § 1153(h)(3) means the exact opposite of what the majority holds. See Li v. Renaud, 654 F.3d 376, 382-83 (2d Cir.2011). Other courts, including the original three-judge panel in this case, concluded that § 1153(h)(3) is ambiguous, and that the Board of Immigration Appeals’s (BIA) decision is entitled to deference under Chevron U.S.A Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). See, e.g., Cuellar de Osorio v. Mayorkas, 656 F.3d 954, 965-66 (9th Cir.2011), vacated, 677 F.3d 921 (9th Cir.2012); Zhong v. Novak, No. 08-4597, 2010 WL 3302962, at *7-9 (D.N.J. Aug. 18, 2010); Co v. U.S. Citizenship & Immigration Serv., No. CV 09-776-MO, 2010 WL 1742538, at *4 (D.Or. Apr. 23, 2010); cf. Robles-Tenorio, 444 Fed.Appx. at 649 (“It is unclear whether the text and structure of (h)(1) and (h)(3) can be reconciled in any coherent or reasonable fashion.”). If the meaning of § 1153(h)(3) were truly as clear and unmistakable as the majority holds, it certainly has eluded more than its share of reasonable jurists.[1]
*1017 I would hold that 8 U.S.C. § 1153(h)(3) is ambiguous because it contains language simultaneously including and excluding derivative beneficiaries of F3 and F4 visa petitions from the benefits of the Child Status Protection Act (the CSPA), 8 U.S.C. § 1153(h). Because Congress did not “speak[ ] with the precision necessary to say definitively whether [the statute] applies to” F3 and F4 derivative beneficiaries, I would proceed to Chevron step two. Mayo Found. for Med. Educ. & Research v. United States, — U.S.—, 131 S.Ct. 704, 711, 178 L.Ed.2d 588 (2011) (first alteration added, second alteration in original, and citation omitted). At step two, I would defer to the BIA’s interpretation of § 1153(h)(3) in Matter of Wang, 25 I. & N. Dec. 28 (2009). Because the majority holds otherwise, I respectfully dissent.
I. Chevron Step One
At Chevron step one, “we ask whether the statute’s plain terms ‘directly addres[s] the precise question at issue.’ ” Nat’l Cable & Telecomms. Ass’n v. Brand X Internet Servs., 545 U.S. 967, 986, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005) (quoting Chevron, 467 U.S. at 843, 104 S.Ct. 2778) (alteration in original). “If the statute is ambiguous on the point, we defer at step two to the agency’s interpretation so long as the construction is ‘a reasonable policy choice for the agency to make.’ ” Id. (quoting Chevron, 467 U.S. at 845, 104 S.Ct. 2778). Thus, the relevant question at the first step of Chevron is whether “the intent of Congress is clear.” Chevron, 467 U.S. at 842, 104 S.Ct. 2778. Unless the statute’s plain text “speak[s] with the precision necessary to say definitively whether [the statute] applies to” a particular class of individuals, the statute is ambiguous. Mayo Found., 131 S.Ct. at 711 (alteration in original). Typically, such an ambiguity “lead[s] ... inexorably to Chevron step two.” Id.
Section 1153(h)(3) states: “If the age of an alien is determined under paragraph (1) to be 21 years of age or older for the purposes of subsections (a)(2)(A) and (d) of this section, the alien’s petition shall automatically be converted to the appropriate category and the alien shall retain the original priority date issued upon receipt of the original' petition.” 8 U.S.C. § 1153(h)(3). The crux of the appeal is whether F3 and F4 derivative beneficiaries are entitled to the benefits provided in this provision.
Many reasonable constructions of § 1153(h)(3) are possible. One could reasonably read § 1153(h)(3), as the majority does, to include F3 and F4 derivative beneficiaries because this provision references the age-calculation formula in § 1153(h)(1), which covers derivative beneficiaries of F3 and F4 petitions through § 1153(h)(2). But three limitations in § 1153(h)(3) complicate matters: (1) that a petition must be converted “to the appropriate category;” (2) that only “the alien’s petition” may be converted; and (3) that the conversion process has to occur “automatically.” See 8 U.S.C. § 1153(h)(3). By ignoring statutory language contrary to its interpretation before finding the plain meaning clear, the majority not only misconstrues its role at Chevron step one, but it also runs afoul of Supreme Court precedent controlling how courts are supposed to interpret statutes. See Nat’l Ass’n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 666, 127 S.Ct. 2518, 168 L.Ed.2d 467 (2007) (“In making the threshold determination under Chevron, ‘a reviewing court should not confine itself to examining a particular statutory provision in isolation.’ ”) (citation omitted); FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000) (“It is a ‘fundamental canon of statutory construction that the words of a statute must be *1018 read in their context and with a view to their place in the overall statutory scheme.’ ”) (citation omitted).
One could reasonably construe § 1153(h)(3) as excluding aged-out F3 and F4 derivative beneficiaries. This provision requires conversion “to the appropriate category.” 8 U.S.C. § 1153(h)(3). Section 1153(a) identifies the only categories for which a family-preference petition may be filed: (1) “[ujnmarried sons and daughters of citizens;” (2) “[s]pouses and unmarried sons and unmarried daughters of permanent resident aliens;” (3) “[mjarried sons and married daughters of citizens;” and (4) “[brothers and sisters of citizens.” Id. § 1153(a)(1) — (4). The children eligible to enter as derivative beneficiaries of their parents’ visa petitions are the grandchildren, nieces, and nephews of United States citizens. When those children turn 21 and are no longer eligible to enter with their parents, there is no section 1153(a) category into which they fit on their own. This led the Second Circuit to conclude that Congress did not intend to provide them the benefits of automatic conversion and retention of their original priority dates: “Because there is no family preference category for grandchildren of [lawful permanent residents], and Cen has not specified a category that would be appropriate, Cen cannot be converted to an ‘appropriate category’ with respect to his grandfather’s petition. Therefore, Cen is not eligible under Section 1153(h)(3) to retain the 1994 priority date of his grandfather’s petition.” Li, 654 F.3d at 385 (emphasis added). We should do the same.
Second, § 1153(h)(3) requires “the alien’s petition” to be automatically converted. 8 U.S.C. § 1153(h)(3). As the majority concedes, conversion of F3 and F4 derivative beneficiaries to the F2B category requires “a subsequent petition” and “a new petitioner” because “the identity of the petitioner changes from the beneficiary’s grandparent or aunt or uncle to his parent.” See id. § 1153(a)(2)(B). But “a subsequent petition” is not the alien’s original petition. Because the alien’s original petition cannot be converted, as § 1153(h)(3) requires, and, instead, an entirely new petition must be filed, one could also reasonably conclude that Congress did not intend to cover F3 and F4 derivative beneficiaries in § 1153(h)(3).[2] See Li, 654 F.3d at 384 (implying that § 1153(h)(3) does not apply where “a different family-sponsored petition by a different petitioner” is required).
Third, § 1153(h)(3) mandates that the conversion process occur “automatically.” 8 U.S.C. § 1153(h)(3). The majority correctly recognizes that “[w]hen the parents of aged-out derivative beneficiaries of F3 or F4 petitioners receive their visas and attain [lawful permanent resident] status, they can file F2B petitions naming their now-adult sons and daughters as primary beneficiaries.” See id. § 1153(a)(2)(B). An action cannot be “automatic” if it depends on what a person can or may do, not what he or she definitely will do. A process is “automatic” if it is “self-acting or self-regulating,” or occurs “without thought or conscious intention.” Webster’s Third New International Dictionary 148 (2002). As the original panel in this case concluded, “The phrase ‘the alien’s petition shall automatically be converted to the appropriate category,’ 8 U.S.C. § 1153(h)(3), suggests that the same petition, filed by *1019 the same petitioner for the same beneficiary, converts to a new category. This understanding comports with the ordinary meaning of the word ‘automatic,’ which implies that the conversion should happen without any outside input, such as a new petitioner.” Cuellar de Osorio v. Mayorkas, 656 F.3d 954, 962 (9th Cir.2011), withdrawn by 677 F.3d 921, 921-22 (9th Cir.2012).
The majority's reading of § 1153(h)(3) thus strains the ordinary meaning of the word “automatically,” essentially reading this limitation on which petitions may be converted out of the statute. This is not a sound approach to statutory interpretation. See Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 175, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009) (“Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.”) (citation omitted); 62 Cases, More or Less, Each Containing Six Jars of Jam v. United States, 340 U.S. 593, 596, 71 S.Ct. 515, 95 L.Ed. 566 (1951) (“Congress expresses its purpose by words. It is for us to ascertain — neither to add nor to subtract, neither to delete nor to distort.”).
The majority recognizes the problem that an F2B petition requires an entirely new petition and petitioner, but it only considers this issue in the course of determining whether the statutory scheme set up by Congress is impracticable. In my view, the need to file a new petition does not go to whether the statutory scheme is impracticable and thus should be excepted from the plain meaning rule. It goes to whether the plain meaning of § 1153(h)(3) is ambiguous. The majority disregards the lack of any appropriate category to which derivative beneficiaries of F3 and F4 petitions can be converted before finding the plain language clear. In doing so, the majority overlooks highly relevant evidence from the overall statutory scheme that Congress did not intend for these individuals to receive the benefits identified in § 1153(h)(3). See Brown & Williamson, 529 U.S. at 132-33, 120 S.Ct. 1291 (stating that “a reviewing court should not confine itself to examining a particular statutory provision in isolation” and should consider how statutory language fits into “the overall statutory scheme”) (citation omitted). It forgets that “[i]n ascertaining the plain meaning of the statute, the court must look to ... the language and design of the statute as a whole.” K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988).
Section 1153(h)(3) is also unclear about whether aged-out derivative beneficiaries are entitled to retain their original priority dates. Importantly, § 1153(h)(3) ties automatic conversion and retention of an original priority date together by specifying that an eligible alien’s petition “shall automatically be converted to the appropriate category and the alien shall retain the original priority date issued upon receipt of the original petition.” 8 U.S.C. § 1153(h)(3) (emphasis added). “[T]he Supreme Court has said that ‘and’ presumptively should be read in its ‘ordinary’ conjunctive sense unless the ‘context’ in which the term is used or ‘other provisions of the statute’ dictate a contrary interpretation.” OfficeMax, Inc. v. United States, 428 F.3d 583, 589 (6th Cir.2005) (listing cases); see also Bruesewitz v. Wyeth LLC, — U.S. — , 131 S.Ct. 1068, 1078, 179 L.Ed.2d 1 (2011) (noting that “linking independent ideas is the job of a coordinating junction like ‘and’ ”). Nothing in the statute suggests that Congress meant for the word “and” to be read as “or.” Since the word “and” ties the two benefits together, the ambiguity about the availability of automatic conversion to F3 and F4 derivative *1020 beneficiaries also renders the statute ambiguous as to whether such beneficiaries are entitled to retention of their original priority dates. See Li, 654 F.3d at 383-84 (rejecting the argument that the two benefits are distinct and independent).
Accordingly, I would hold that it is unclear whether Congress intended for aged-out F3 and F4 derivative beneficiaries to enjoy automatic conversion to a new category and retention of their priority dates. Section 1153(h)(3) appears to give contradictory answers to this question. Because this provision’s plain terms do not yield a clear and consistent answer, I would proceed to Chevron step two.
II. Chevron Step Two
“The sole question for the Court at step two under the Chevron analysis is ‘whether the agency’s answer is based on a permissible construction of the statute.’ ” Mayo Found., 131 S.Ct. at 712 (quoting Chevron, 467 U.S. at 843, 104 S.Ct. 2778). “If a statute is ambiguous, and if the implementing agency’s construction is reasonable, Chevron requires a federal court to accept the agency’s construction of the statute, even if the agency’s reading differs from what the court believes is the best statutory interpretation.” Brand X, 545 U.S. at 980, 125 S.Ct. 2688. The BIA’s interpretations of the INA are entitled to Chevron deference. See Negusie v. Holder, 555 U.S. 511, 517, 129 S.Ct. 1159, 173 L.Ed.2d 20 (2009).
The BIA interpreted § 1153(h)(3) in Matter of Wang, 25 I. & N. Dec. at 33-39, holding that automatic conversion and priority date retention are not available where there is no category to which a beneficiary’s petition can be converted, and a new petition would have to be filed by a new petitioner. See id. at 38-39; see also id. at 35 (explaining how “conversion” and “retention” have traditionally been interpreted). Thus, the BIA held that an aged-out derivative beneficiary of an F4 petition was not entitled to automatic conversion to a new category and retention of her original priority date when her father subsequently filed an F2 petition on her behalf. See id. at 38-39.
I would hold that the BIA’s interpretation of § 1153(h)(3) is reasonable. As discussed above, there is no appropriate category to which derivative beneficiaries of F3 and F4 petitions may be converted if they age out because a petition may not be filed on behalf of a United States citizen’s niece, nephew, or grandchild. No such family-preference categories exist. As the BIA recognized, there is “no clear indication in the statute that Congress intended to expand the historical categories eligible for automatic conversion and priority date retention.... ” Id. at 36. The legislative history of the CSPA is also unclear about whether Congress intended for aged-out F3 and F4 derivative beneficiaries to receive the benefits of § 1153(h)(3). See id. at 36-38. Policy considerations also counsel deference to the BIA’s interpretation of the statute. Congress caps the number of visas available to aliens in each preference category, and the demand for such visas far outstrips the supply. See 8 U.S.C. § 1151(c); Matter of Wang, 25 I. & N. Dec. at 38. Reading section 1153(h)(3) as the majority does will not permit more aliens to enter the country or keep more families together, but will simply shuffle the order in which individual aliens get to immigrate. If F3 and F4 derivative beneficiaries can retain their parents’ priority date, they will displace other aliens who themselves have endured lengthy waits for a visa. What’s more, these derivative beneficiaries — who do not have one of the relationships in section 1153(a) that would independently qualify them for a visa— would bump aliens who do have such a *1021 qualifying relationship. As the BIA recognized, Congress could not have intended this zero-sum game. See Matter of Wang, 25 I. & N. Dec. at 36-38. I would defer to the agency’s reasonable construction of the statute at Chevron step two. See Brand X, 545 U.S. at 980,125 S.Ct. 2688.
III. Conclusion
I would hold that § 1153(h)(3) is ambiguous about whether aged-out F3 and F4 derivative beneficiaries are within its ambit, and that the BIA’s conclusion that they are not is reasonable. I believe that the BIA’s construction of this provision is entitled to deference. See Mayo Found., 131 S.Ct. at 712; Brand X, 545 U.S. at 980,125 S.Ct. 2688. Accordingly, I would affirm the district court.
I respectfully dissent.

. I do not state or imply that a circuit split is evidence that a statute is ambiguous, although the Supreme Court has stated that “contrasting positions of the respective parties and their amici ” may demonstrate that a statute "do[es] embrace some ambiguities.” Dewsnup v. Timm, 502 U.S. 410, 416, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992); see also Smiley v. Citibank (S.D.), N.A., 517 U.S. 735, 739, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996) (“In light of the two dissents from the opinion of the Supreme Court of California, and in light of the opinion of the Supreme Court of New Jersey creating the conflict that has prompted us to take this case, it would be difficult indeed to contend that the word 'interest' in the National Bank Act is unambiguous with regard to the point at issue here.”) (internal citations omitted).
Of course, "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.” Robinson v. Shell Oil Co., 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). I merely point out the common sense proposition that if the intent of Congress were truly clear, it would be surprising that so many courts misread the statute. Nevertheless, it is worth noting that there is currently a circuit split over whether the existence of a circuit split is evidence of statutory ambiguity. Compare Snell Island SNF LLC v. NLRB, 568 F.3d 410, 419-20 (2d Cir.2009) (evidence), vacated on other grounds, - U.S. -, 130 S.Ct. 3498, 177 L.Ed.2d 1085 (2010), McCreary v. Offner, 172 F.3d 76, 82-83 (D.C.Cir.1999) (same), and In re S. Star Foods, Inc., 144 F.3d 712, 715 (10th Cir.1998) (same), with Allapattah Servs., Inc. v. Exxon Corp., 333 F.3d 1248, 1254 n. 4 (11th Cir.2003) (not evidence), aff'd, 545 U.S. 546, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005), and Rosmer v. Pfizer Inc., 263 F.3d 110, 118 (4th Cir.2001) (same).

. Contrary to the majority opinion, the statute does not "expressly recognize[] the possibility of automatic conversion of a subsequent petition.” As the Second Circuit noted, "[e]ach time the Act uses the word 'conversion' it describes a change — without need for an additional petition — from one classification to another, not from one person’s family-sponsored petition to another.” Li, 654 F.3d at 384 (emphasis added).