# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 8, 2011

No. 10-60373

Lyle W. Cayce
Clerk

MOHAMMAD ABUBAKAR KHALID,

Petitioner,

v.

ERIC H. HOLDER, JR., U. S. ATTORNEY GENERAL,

Respondent.

Petition for Review of an Order of the
Board of Immigration Appeals

Before DAVIS, CLEMENT, and ELROD, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

Mohammad Abubakar Khalid, a citizen of Pakistan, petitions this court for review of a Board of Immigration Appeals (BIA) decision dismissing his appeal of an Immigration Judge's (IJ) decision ordering him removed from the United States. We conclude that the plain language of the Child Status Protection Act (CSPA) is unambiguous and that the BIA's interpretation of the statute in *Matter of Wang*, 25 I. & N. Dec. 28 (BIA 2009), contravenes the plain language of the CSPA. We decline to follow *Matter of Wang* in this circuit; we GRANT the petition for review and remand to the BIA for further proceedings consistent with this opinion.

No. 10-60373

## I.

Khalid is a native and citizen of Pakistan. In June 1996, Khalid was inspected and admitted into the United States pursuant to a visitor's visa. Earlier that year, Khalid's aunt, a United States citizen, had filed a fourth-preference visa petition[1] for the benefit of Khalid's mother. The petition had a January 12, 1996 priority date—a date linked to the time of filing to reserve the petition's "place in line."[2] At the time, Khalid was eleven years old. Had his mother's priority date become current—that is, reached the "front of the line"—within approximately ten years, Khalid, as his mother's "child,"[3] would have been eligible to become a Lawful Permanent Resident (LPR) at the same time as his mother as a derivative beneficiary on his aunt's petition for her. Unfortunately, his mother's January 1996 priority date did not become current until February 2007, just over eleven years later. As a result, by the time his mother became a LPR based on his aunt's petition, he was twenty-two years old. Thus, when he applied to adjust his status to that of an LPR as a derivative beneficiary of his aunt's petition, the Department of Homeland Security (DHS)

---

[1] The Immigration and Nationality Act establishes four preference categories for family-based petitions, 8 U.S.C. § 1153(a):

- First preference: unmarried sons and daughters of U.S. citizens (§ 1153(a)(1))
- Second preference: spouses and children of LPRs (§ 1153(a)(2)(A)) and unmarried sons and daughters of LPRs (§ 1153(a)(2)(B))
- Third preference: married sons and daughters of U.S. citizens (§ 1153(a)(3))
- Fourth preference: brothers and sisters of adult U.S. citizens (§ 1153(a)(4))

[2] "After a citizen or legal permanent resident has filed, on behalf of an alien relative, a visa petition . . . , the Government will approve the petition after verifying that the claimed familial relationship is bona fide. An approved petition carries with it both a preference category and a priority date." *Bolvito v. Mukasey*, 527 F.3d 428, 430 (5th Cir. 2008) (internal quotation marks omitted).

[3] The Immigration and Nationality Act uses the words "child" or "children" to describe unmarried persons under age twenty-one. Once a "child" reaches age twenty-one, he or she becomes a "son" or "daughter," and is no longer a "child." 8 U.S.C. § 1101(b).

No. 10-60373

denied his application because he was no longer a "child" under the immigration law.

Several months later, Khalid's mother, by then an LPR, filed a second-preference visa petition on his behalf. The petition was assigned a priority date of November 23, 2007. Based on that priority date, a visa would not become available to Khalid until around 2015.

Shortly after DHS denied Khalid's application to adjust his status under his aunt's petition, DHS issued him a Notice to Appear (NTA) for removal proceedings. Khalid admitted the factual allegations in the NTA and conceded the charge of overstaying his visa under 8 U.S.C. § 1227(a)(1)(B).

At a March 2008 immigration court hearing, Khalid requested adjustment of status, among other things. He maintained that he was eligible to adjust status under the new second-preference petition his mother had filed for him because he could retain the January 1996 priority date of the original fourth-preference petition filed by his aunt. Using that priority date, a visa was immediately available.[4] Based on the BIA's recent decision in *Matter of Wang*, 25 I. & N. Dec. 28 (BIA 2009), however, the immigration judge rejected Khalid's argument that he could retain the earlier priority date.

Relying on *Matter of Wang*, the immigration judge denied Khalid's application for adjustment of status. The BIA, in turn, dismissed Khalid's appeal: "[T]he respondent has not persuaded us that reconsideration of *Matter of Wang* . . . is warranted." Khalid timely petitioned this court to review the decision of the BIA.

---

[4] Subject to certain restrictions, an alien who is physically present in the United States may apply to adjust his status to that of an LPR if he is otherwise eligible to receive an immigrant visa and an immigrant visa is immediately available to him at the time of the filing of the application. 8 C.F.R. § 245.1(a).

No. 10-60373

## II.

We review the BIA's findings of fact for substantial evidence and its legal determinations *de novo*. *Lopez-Gomez v. Ashcroft*, 263 F.3d 442, 444 (5th Cir. 2001). As to the BIA's interpretation of immigration statutes, we defer to the BIA to the extent prescribed by *Chevron*'s two-step analysis. *Singh v. Gonzales*, 436 F.3d 484, 487 (5th Cir. 2006) (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)).

Under *Chevron* step one, we must determine whether the statute at issue is ambiguous. "If the intent of Congress is clear,"—that is, the statute is unambiguous with respect to the question presented—"the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43. To determine whether a statute is ambiguous, we employ the "traditional tools of statutory construction." *Id.* at 843 n.9. Chief among these, of course, is the "plain language of the statute." *In re Dale*, 582 F.3d 568, 573 (5th Cir. 2009) (citing *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002)). At the same time, the Supreme Court has cautioned that the statute must be read as a whole: "In determining whether Congress has specifically addressed the question at issue, a reviewing court should not confine itself to examining a particular statutory provision in isolation." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132-33 (2000); *see also Brown v. Gardner*, 513 U.S. 115, 118 (1994) ("Ambiguity [in a statute] is a creature not of definitional possibilities but of statutory context."); *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 42 (1990) ("Because we find that the statute, as a whole, clearly expresses Congress' intention, we decline to defer to [the agency's] interpretation."). Thus, a statutory provision cannot be read in isolation, but necessarily derives meaning from the context provided by the surrounding provisions, as well as the broader context of the statute as a whole.

No. 10-60373

If we determine that the provision is ambiguous as to the question presented, the analysis proceeds to *Chevron* step two, which asks "whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. In this regard, we may consider "only whether the decision is arbitrary, capricious, or manifestly contrary" to the statute, and may not substitute our own judgment "for a reasonable alternative formulated by the BIA." *Montera-Cruz v. Gonzales*, 409 F.3d 246, 253 (5th Cir. 2005). Therefore, if we find ambiguity as to Congress's intent, review of the agency's construction will be highly deferential.

### A.

Congress enacted the Child Status Protection Act, Pub. L. No. 107-208 (Aug. 6, 2002), which amended the Immigration and Nationality Act (INA) to "provide age-out protection for aliens who were children (under 21) at the time a petition for permanent resident status was filed on their behalf." *Ochoa-Amaya v. Gonzales*, 479 F.3d 989, 992 (9th Cir. 2007). The CSPA's amendments addressed "the often harsh and arbitrary effects of the age-out provisions under the previously existing statute." *Padash v. INS*, 358 F.3d 1161, 1173 (9th Cir. 2004).

This appeal concerns the interpretation of 8 U.S.C. § 1153(h), which was added by the CSPA. Section 1153(h)[5] is entitled "Rules for determining whether

---

[5] (h) Rules for determining whether certain aliens are children

(1) In general

For purposes of subsections (a)(2)(A) and (d) of this section, a determination of whether an alien satisfies the age requirement in the matter preceding subparagraph (A) of section 1101(b)(1) of this title shall be made using—

(A) the age of the alien on the date on which an immigrant visa number becomes available for such alien (or, in the case of subsection (d) of this section, the date on which an immigrant visa number became available for the alien's parent), but only if the alien has sought to acquire the status of an alien lawfully admitted for permanent residence within one year of such availability; reduced by

certain aliens are children." It contains four subsections. Subsection (h)(1) is entitled "In general." Subsection (h)(2) is entitled "Petitions described." Subsection (h)(3) is entitled "Retention of priority date." Subsection (h)(4) is entitled "Application to self-petitions," which is not relevant to this appeal. We discuss each of the three relevant subsections in turn.

Subsection (h)(1) provides a formula for determining the age of a visa petition beneficiary "[f]or purposes of subsections (a)(2)(A) and (d) [of § 1153]." § 1153(h)(1). Both of those subsections refer to children. Subsection (a)(2)(A) provides the statutory authority to issue visas to "children of an alien lawfully admitted for permanent residence." § 1153(a)(2)(A). Subsection (d), entitled "Treatment of family members," provides the statutory authority to issue a visa to a "child . . . if accompanying or following to join, the . . . parent." § 1153(d). To determine whether an alien qualifies as a "child" under those provisions, CSPA provides an age formula that allows for an adjustment to the alien's biological age to account for agency delay in processing the petition. *See*

---

(B) the number of days in the period during which the applicable petition described in paragraph (2) was pending.

(2) Petitions described

The petition described in this paragraph is—

(A) with respect to a relationship described in subsection (a)(2)(A) of this section, a petition filed under section 1154 of this title for classification of an alien child under subsection (a)(2)(A) of this section; or

(B) with respect to an alien child who is a derivative beneficiary under subsection (d) of this section, a petition filed under section 1154 of this title for classification of the alien's parent under subsection (a), (b), or (c) of this section.

(3) Retention of priority date

If the age of an alien is determined under paragraph (1) to be 21 years of age or older for the purposes of subsections (a)(2)(A) and (d) of this section, the alien's petition shall automatically be converted to the appropriate category and the alien shall retain the original priority date issued upon receipt of the original petition.

(4) Application to self-petitions

Paragraphs (1) through (3) shall apply to self-petitioners and derivatives of self-petitioners.

No. 10-60373

§ 1153(h)(1). Specifically, the formula reduces the alien's biological age by "the number of days in the period during which the applicable petition" was pending, thus allowing an alien to be treated as a "child" even though his true biological age might exceed twenty-one. *Id.*

Subsection (h)(2) delineates two sets of visa petitions to which the subsection (h)(1) formula applies. In the case of a child of an LPR, subsection (h)(2)(A) refers to a visa petition for classification of the child under subsection (a)(2)(A). § 1153(h)(2)(A). In the case of a child "who is a derivative beneficiary under subsection (d)," subsection (h)(2)(B) refers to a visa petition for classification of the parent—the principal beneficiary—"under subsection (a), (b), or (c)." § 1153(h)(2)(B). Those subsections, in turn, refer to family-based, employment-based, and diversity-based visa petitions, respectively. Consequently, subsection (h)(1)'s formula applies to a child of an LPR, or a child who is a derivative beneficiary of any family, employment, or diversity visa petition.

Subsection (h)(3) provides alternate benefits to aliens who, even after utilizing the CSPA formula, are no longer "children." It applies only "[i]f the age of an alien is determined under paragraph (1) to be 21 years of age or older for the purposes of subsections (a)(2)(A) and (d) of this section." § 1153(h)(3). In that case, the subsection affords two benefits to the aged-out alien—automatic conversion and priority date retention: "[T]he alien's petition shall automatically be converted to the appropriate category and the alien shall retain the original priority date issued upon receipt of the original petition." *Id.*

**B.**

The BIA has interpreted these provisions of CSPA in *Matter of Wang*, 25 I. & N. Dec. 28. The facts of *Matter of Wang* are essentially identical to the facts of this case. Wang's sister, a United States citizen, filed a fourth-preference visa

No. 10-60373

petition on his behalf in 1992, with his minor children as derivative beneficiaries. *Id.* at 29. By the time the 1992 priority date became current, however, one of his daughters no longer qualified as a "child," and thus could no longer be a derivative beneficiary. *Id.* When Wang became an LPR in 2006, he filed a second-preference visa petition on behalf of his daughter. *Id.* He requested that DHS allow the petition to retain the 1992 priority date from the prior petition. *Id.* DHS declined to do so, instead assigning the petition a 2006 priority date. *Id.* DHS certified its decision to the BIA. *Id.* at 30.

The BIA agreed with DHS, concluding that § 1153(h)(3) does not apply to derivative beneficiaries, like Wang's daughter and Khalid, who have aged out of a fourth-preference visa petition. At the outset, the BIA determined that § 1153(h)(3) is ambiguous regarding whether it applies to fourth-preference petitions:

> Unlike sections [1153(h)(1)] and (2), which when read in tandem clearly define the universe of petitions that qualify for the "delayed processing formula," the language of section [1153(h)(3)] does not expressly state which petitions qualify for automatic conversion and retention of priority dates. Given this ambiguity, we must look to the legislative intent behind section [1153(h)(3)].

*Id.* at 33. After canvassing the legislative history of CSPA, the BIA seized upon two themes: first, that the legislation was a response to the "then-extensive administrative delays in the processing of visa petitions," *id.* at 36-37, and second, that Congress intended "to allow for retention of child status without displacing others who have been waiting patiently in other visa categories," *id.* at 37 (internal quotation marks omitted). Putting these two ideas together, the BIA rejected the idea that Congress intended a broad construction of § 1153(h)(3):

> While the CSPA was enacted to alleviate the consequences of administrative delays, there is no clear evidence that it was intended to address delays resulting from visa allocation issues,

such as the long wait associated with priority dates. If we interpret section [1153(h)] as the petitioner advocates, the beneficiary, as a new entrant in the second-preference visa category line, would displace other aliens who have already been in that line for years before her.

*Id.* at 38.

The BIA also supported its construction based on the notion that "automatic conversion" and "priority date retention" have recognized meanings in immigration regulations. *Id.* at 34-35. According to the BIA, the term "conversion" has "consistently been used to mean that a visa petition converts from one visa category to another . . . without the need to file a new visa petition." *Id.* at 35. Likewise, "priority date retention" has "always been limited to visa petitions filed by the same family member." *Id.*

The BIA provided several examples from the regulations. For instance, the regulations have long provided for "automatic conversion of preference classification" from one category to another when certain events occur, such as when the person who filed the petition naturalizes or when the beneficiary's marital status changes. *See* 8 C.F.R. § 204.2(i). "Thus, a second-preference petition filed on behalf of the son or daughter of a petitioner who naturalizes would automatically convert to a first-preference petition, and the newly converted petition would retain the original priority date." *Matter of Wang*, 25 I. & N. Dec. at 34. As another example, prior to CSPA's enaction, the regulations provided for priority date retention for an aged-out child who was a derivative beneficiary of a second-preference spousal petition. *See* 8 C.F.R. § 204.2(a)(4). Under that regulation, the original petitioner would have to file a new petition for the aged-out child, but the new petition would then retain the priority date from the original petition.

Applying these principles to Wang's case, the BIA determined that Wang's daughter could not avail herself of automatic conversion or priority date

retention. She was not entitled to automatic conversion because when she "aged out from her status as a derivative beneficiary on a fourth-preference petition, there was no other category to which her visa could convert because no category exists for the niece of a United States citizen." *Matter of Wang*, 25 I. & N. Dec. at 35. As for priority date retention, the BIA determined that she could not keep her priority date because the new petition was filed by a different petitioner—her father, rather than her aunt. *Id.* Affording these benefits in such a case would represent a break with historical practice. Thus, the BIA concluded that Congress did not intend these benefits to apply to derivative beneficiaries of fourth-preference visa petitions, like Wang's daughter and Khalid.

In so holding, the BIA acknowledged in a footnote that it was disregarding its prior unpublished opinion in *Matter of Garcia*, No. A79 001 587, 2006 WL 2183654 (BIA June 16, 2006). *Matter of Garcia* reached the opposite conclusion on essentially identical facts:

> In this instance, the principal beneficiary of the original petition was the respondent's mother, who became a lawful permanent resident of the United States once a visa number became available to her in 1996. The respondent was (and remains) her mother's unmarried daughter, and therefore the "appropriate category" to which her petition was converted is the second-preference category of family-based immigrants, i.e., the unmarried sons and daughters of lawful permanent residents. Furthermore, the respondent is entitled to retain the January 13, 1983, priority date that applied to the original fourth-preference petition, and therefore a visa number under the second-preference category is immediately available to the respondent.

*Id.* In *Matter of Wang*, the BIA declined to follow *Matter of Garcia* largely because that decision did not discuss the "legislative framework of the statute." *See Matter of Wang*, 25 I. & N. Dec. at 33 n.7.

No. 10-60373

## C.

Before considering the BIA's interpretation of the statute under *Chevron*, we must first determine whether the statute is ambiguous as to the question presented. The BIA identified what it believed to be the relevant ambiguity: "[T]he language of section [1153(h)(3)] does not expressly state which petitions qualify for automatic conversion and retention of priority dates." *Id.* at 33. The BIA is certainly correct that subsection (h)(3) does not explicitly delineate which petitions qualify. Subsection (h)(3) refers only to "the alien's petition" and "the original petition." If the statute said nothing more, the meaning of "petition" might be ambiguous because of the many possible types of petitions. Read as a whole, however, the statute does say more, and the other provisions of subsection (h) clarify the meaning of this otherwise-ambiguous term. *See Brown*, 513 U.S. at 118 ("Ambiguity [in a statute] is a creature not of definitional possibilities but of statutory context . . . ."). Indeed, subsection (h)(2) speaks directly to the question at issue and is entitled "Petitions described."

The BIA discounted subsection (h)(2) because (h)(3), unlike (h)(1), does not expressly reference it. Yet, the BIA's analysis ignores the fact that (h)(3) expressly references (h)(1), which in turn expressly references (h)(2). The benefits of automatic conversion and priority date retention are explicitly conditioned on a particular outcome from the formula in (h)(1)—that the alien's "age" is at least 21. § 1153(h)(3) ("*If* the age of an alien is determined under paragraph (1) to be 21 years of age or older . . . ."). The formula itself operates on petitions described in (h)(2). Hence, (h)(3) must operate on this same set of petitions because the outcome that triggers the (h)(3) benefits can occur only if the formula applies.[6] In light of the interrelated nature of the three provisions, reading the subsection as a whole confirms that Congress intended (h)(3) to

---

[6] Given (h)(3)'s dependency on (h)(1), if Congress intended (h)(3) to apply to a different set of petitions than (h)(1), it would likely have said so explicitly.

apply to any alien who "aged out" under the formula in (h)(1) with respect to the universe of petitions described in (h)(2).

The correctness of this straightforward reading is confirmed by the parallels between the three provisions. Subsection (h)(1) and (h)(3) both employ the phrase "for purposes of subsections (a)(2)(A) and (d)," while (h)(2) contains two subparts—one discussing subsection (a)(2)(A) and one discussing subsection (d). Subsection (d), entitled "Treatment of family members," provides the statutory authority to issue a visa to a "child" as a derivative beneficiary "if accompanying or following to join, the . . . parent"—precisely the situation of Khalid and Wang's daughter relative to their parents' fourth-preference petitions. § 1153(d). No one disputes that (h)(1)'s formula operates on Khalid and Wang's daughter as derivative beneficiaries under subsection (d). Nevertheless, under (h)(3), which uses the identical phrase—"for purposes of subsections (a)(2)(A) and (d)"—the BIA decided that these fourth-preference petitions were implicitly excluded. This runs afoul of the traditional canon of construction that "identical words and phrases within the same statute should normally be given the same meaning." *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007).

In short, subsection (h)(2) directly answers the question that the BIA found that Congress left unanswered. The traditional canons of statutory construction, and the interdependency between subsections (h)(1), (h)(2), and (h)(3) compel the conclusion that the "[p]etitions described" in (h)(2) apply with equal force to (h)(1) and (h)(3). Thus, "the statute, as a whole, clearly expresses Congress' intention" about the universe of petitions covered by (h)(3). *See Dole*, 494 U.S. at 42. Hence, there is no ambiguity. "Congress has directly spoken to the precise question at issue," and thus there is no room for the agency to impose its own answer to the question. *Chevron*, 467 U.S. at 842-44.

12

No. 10-60373

Even in the face of this direct answer, however, the BIA attempted to create ambiguity by looking to the legislative history, and by assuming that Congress could not have intended such a break with prior practice regarding the concepts of conversion and retention. These arguments might have more force if (h)(2) were not so precisely on point, but resort to these arguments cannot make ambiguous what the statute's plain language and structure make so clear.

The BIA relied heavily on the legislative history to show that Congress was concerned only with agency delays and not delays caused by visa demand. Here, "[t]here is no reason to recite legislative history given the clarity of the statutory text." *Freeman v. Quicken Loans, Inc.*, 626 F.3d 799, 804 n.9 (5th Cir. 2010). Nevertheless, as is often the case with legislative history, statements can be pulled from the record to support the contrary proposition as well. For example, Senator Feinstein, who introduced CSPA in the Senate, discussed the "age out" problem both in terms of agency delay *and* visa demand. *See* 147 Cong. Rec. S3275 (daily ed. Apr. 2, 2001) (statement of Sen. Feinstein) ("As a consequence, a family whose child's application for admission to the United States has been pending for years may be forced to leave that child behind either because the INS was unable to adjudicate the application before the child's 21st birthday, *or because growing immigration backlogs in the immigration visa category caused the visa to be unavailable before the child reached his 21st birthday*." (emphasis added)).

The BIA's observations about past practices regarding conversion and retention have somewhat greater force. Again, if the text were more murky, such arguments might factor into the analysis. On the other hand, with statutes like this one, where Congress has spoken with such clarity, the fact that carrying out the legislative will might require a break with past practices under the regulations does not make Congress's intent ambiguous. "It is a fundamental precept of administrative law that an agency . . . regulation 'cannot overcome the

13

plain text enacted by Congress.'" *Sierra Club, Inc. v. Sandy Creek Energy Assocs.*, 627 F.3d 134, 141 n.9 (5th Cir. 2010) (quoting *New Jersey v. EPA*, 517 F.3d 574, 583 (D.C. Cir. 2008)).

Moreover, satisfactory responses exist for the alleged problems the BIA identified with the straightforward construction Khalid advances. First, the BIA pointed out that there is no category to which a fourth-preference petitioner can "automatically convert" at the time he "ages out" but before the primary beneficiary's visa becomes available. This argument misreads the plain language of (h)(3), however. Subsection (h)(3) provides that the "alien's petition shall automatically be converted" only "[i]f the age of an alien is determined under paragraph (1) to be 21 years of age or older." § 1153(h)(3). Thus, the conversion happens only after a determination under (h)(1). This determination cannot be made at the moment the child "ages out," because the (h)(1) formula requires "the age of the alien *on the date on which an immigrant visa number becomes available.*"[7] § 1153(h)(1)(A) (emphasis added). Hence, (h)(3)'s "automatic conversion" cannot be triggered until the primary beneficiary's visa becomes available, because until that time (h)(1)'s formula cannot be computed. At that time, there would be another category to convert to based on the derivative beneficiary's relationship to the primary beneficiary, as the BIA itself suggested in *Matter of Garcia*. *See Matter of Garcia*, 2006 WL 2183654 ("We agree with the respondent that where an [alien] was classified as a derivative beneficiary of the original petition, the 'appropriate category' for purposes of section [1153(h)(3)] is that which applies to the 'aged-out' derivative vis-a-vis the *principal beneficiary* of the original petition.").

---

[7] Arguably, it might be up to a year later than the date the visa becomes available before the formula can be applied. This is so because the formula also requires knowledge of whether "the alien has sought to acquire" LPR status "within one year" of the visa becoming available. § 1153(h)(1)(A).

No. 10-60373

Second, the BIA pointed out that, traditionally, retention of priority dates has required that the petitioner remain the same on both the old and new petitions. As already discussed, however, this tradition is no impediment to Congress enacting a law which provides retention of priority dates even where the petitioner is different, as it appears to have done here. Moreover, retention of priority dates despite a change in petitioner is not without precedent. For example, beneficiaries of employment-based visa petitions retain the priority date of an approved petition for "any subsequently filed petition for any classification" of a new job within three major employment categories, regardless of a change in the employer who files the petition. 8 C.F.R. § 204.5(e).

Finally, under the BIA's interpretation of the statute, the retention benefit does not apply to new petitions, like the one filed by Khalid's mother—only to converted petitions. Yet, if this benefit applied only to petitions that "automatically converted to the appropriate category," there would be no need for the statute to explicitly state that the alien "retain[s] the original priority date issued upon the receipt of the original petition," § 1153(h)(3), because there would always be only one petition, with an unchanged priority date. The BIA's interpretation renders the retention benefit provision redundant and reads it out of the statute. This construction should be avoided. *See In re Crist*, 632 F.2d 1226, 1233 n.11 (5th Cir. 1980) (stating that courts should give effect, whenever possible, "to all parts of a statute and avoid an interpretation which makes a part redundant or superfluous"). Similarly, the retention benefit provision certainly contemplates the possibility of two separate petitions when it states that the "alien shall retain the priority date issued upon receipt of the *original* petition," § 1153(h)(3) (emphasis added), language which implies that there may be *another*, non-original, petition at issue.

Even if the issues the BIA identified would create procedural difficulties, it is not this court's responsibility to resolve them. The only question before us

15

is whether Congress has plainly spoken to the question at issue in the statute. The only ambiguity the BIA has identified in the statute is the universe of petitions to which subsection (h)(3) applies. On this point, Congress has plainly spoken in subsection (h)(2). Accordingly, we hold that the "automatic conversion" and "priority date retention" benefits in (h)(3) unambiguously apply to the entire universe of petitions described in (h)(2).

## D.

In reaching this conclusion, we recognize that the Second Circuit interpreted the statute differently in *Li v. Renaud*, No. 10-2560-cv, 2011 WL 2567037 (2d Cir. June 30, 2011). Although the *Li* court concluded that § 1153(h)(3) was unambiguous and that no deference was owed to the BIA's interpretation in *Matter of Wang*, the *Li* court nevertheless held that "[s]ection 1153(h)(3) does not entitle an alien to retain the priority date of an aged-out family preference petition if the aged-out family preference petition cannot be converted to [an] appropriate category" because a change in the petitioner would be required. *Id.* at *7 (internal quotation marks omitted). Therefore, the court decided, beneficiaries like Khalid and Wang cannot retain their priority dates because the conversion would require changing the petitioner—in our case from Khalid's aunt to Khalid's now-LPR mother. "Such a change would not be a conversion to the appropriate category." *Id.* at *8 (internal quotation marks omitted).

We respectfully disagree. As the BIA explained in *Matter of Garcia*, "the 'appropriate category' for purposes of section [1153(h)(3)] is that which applies to the 'aged-out' derivative vis-a-vis the *principal beneficiary* of the original petition." *Matter of Garcia*, 2006 WL 2183654. Nothing in subsection (h)(3) states or implies that the petitioner cannot change as a result of the conversion, and, as we have already discussed, certainly nothing prevents Congress from

allowing for such conversions even if it would represent a break with the prior regulations.

Notably absent from the *Li* court's analysis is any discussion of the universe of petitions described in subsection (h)(2) and its relationship with subsection (h)(3). Although the *Li* court's reading of the statute is couched in terms of a case-by-case test, in reality it operates as a categorical bar to all derivative beneficiaries of many types of family-based petitions, such as the fourth-preference petition at issue in Khalid's case. In such a case, the petitioner can never remain the same because there is simply no category for a niece or nephew of a U.S. citizen. Given that subsection (h)(2) expressly speaks of derivative beneficiaries of *all* family-based petitions,[8] and that subsection (h)(3) itself expressly refers to derivative petitions by use of the phrase "for purposes of subsections (a)(2)(A) *and (d)*," it seems unlikely that Congress would exclude an entire class of derivative beneficiaries from subsection (h)(3)'s benefits by silent implication based on the unwritten assumption that the petitioner must remain the same. Rather, one would expect any such exclusion to be express, since it would effectively operate categorically.

Indeed, under the *Li* court's restrictive reading, the only derivative beneficiaries of family-based petitions who would qualify for the benefits of subsection (h)(3) would be those on second-preference petitions—a child following to join a parent who was named as a principal beneficiary on a petition filed by the parent's LPR spouse. In that case, the petitioner could remain the same even if the child aged out before the beneficiary parent became an LPR: the

---

[8] 8 U.S.C. § 1153(h)(2) ("The petition described in this paragraph is— . . . with respect to an alien child who is a derivative beneficiary under subsection (d) of this section, a petition filed under section 1154 of this title for classification of the alien's parent under subsection (a), (b), or (c) of this section."). Subsection (a), in turn, enumerates every family-based preference category, including the fourth-preference category which formed the basis of Khalid's aunt's petition—"Brothers and sisters of citizens." § 1153(a).

No. 10-60373

spouse's petition would convert to one on which the child was a principal beneficiary under the preference category for unmarried adult children of LPRs. Yet, in the situation just described, priority date retention has been available under the regulations since 1987. *See* 8 C.F.R. § 204.2(a)(4). The regulation expressly requires that the same petitioner file a new petition in order to qualify. *Id.* Thus, the only difference between the regulation and the *Li* court's reading of subsection (h)(3) is that the statute would relieve the spouse of the burden of filing a new petition, since the conversion would now be automatic. We are skeptical that this meager benefit was all Congress meant to accomplish through subsection (h)(3), especially where nothing in the statute singles out derivative beneficiaries of second-preference petitions for special treatment. Furthermore, if Congress only meant to codify the regulation with this minor adjustment, one would expect that the statute would closely track the language of the regulation. Yet unlike the regulation, which explicitly states that the petitioner cannot change,[9] nothing in the statute requires that the petitioner remain the same.

In sum, the better view is the simpler one—the one that adds no unwritten requirements to the text. *See Bates v. United States*, 522 U.S. 23, 29 (1997) ("[W]e ordinarily resist reading words or elements into a statute that do not appear on its face."). Congress plainly made automatic conversion and priority date retention available to all petitions described in subsection (h)(2). Subsection (h)(2) expressly discusses derivative beneficiaries of all family-based petitions. Congress carved out no exception for fourth-preference petitions, like Khalid's, or for any other preference category. In light of the clarity of the text, legislative history and past agency practices are irrelevant. "[T]he court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43.

---

[9] *See* 8 C.F.R. § 204.2(a)(4) ("[T]he original priority date will be retained *if the subsequent petition is filed by the same petitioner*." (emphasis added)).

No. 10-60373

## III.

Because we conclude that, contrary to the BIA's interpretation in *Matter of Wang*, the benefits of 8 U.S.C. § 1153(h)(3) unambiguously apply to all petitions described in § 1153(h)(2)—including the fourth-preference visa petition of which Khalid was a derivative beneficiary—we GRANT Khalid's petition for review and REMAND to the BIA for further proceedings.