Opinion by Judge MURGUIA; Dissent by Judge MILAN D. SMITH, JR.
OPINION
MURGUIA, Circuit Judge,
with whom PREGERSON, WARDLAW, FISHER, GOULD and PAEZ, Circuit Judges, join in full:
Appellants became lawful permanent residents and immigrated to the United States. However, due to visa quotas and a serious backlog, by the time Appellants received their family-sponsored visas, their children were no longer eligible to accompany them as recipients of derivative visas, which are available only to children under the age of twenty-one. Their children had “aged out” of eligibility.
The question before us is whether these children are entitled to relief under the Child Status Protection Act (“CSPA”), 8 U.S.C. § 1153(h). The CSPA provides, among other things, that when certain aged-out aliens apply for visas under a new category for adults, they may retain the filing date of the visa petition for which they were listed as derivative beneficiaries when they were children. This ensures that visas are available quickly, rather than requiring the now-adult aliens to wait many more years in a new visa line.
The United States Citizen and Immigration Services (“USCIS”) denied Appellants’ requests for priority date retention under the CSPA. USCIS relied on the Board of Immigration Appeals’ (“BIA”) decision in Matter of Wang, 25 I. & N. Dec. 28 (BIA 2009) that the CSPA does not apply to all derivative beneficiaries. The district court, deferring to the BIA’s interpretation, granted summary judgment to USCIS in two separate cases. We reverse.
We conclude that the plain language of the CSPA unambiguously grants automatic conversion and priority date retention to aged-out derivative beneficiaries. The BIA’s interpretation of the statute conflicts with the plain language of the CSPA, and it is not entitled to deference.
I. Family-based immigration overview
We begin with an overview of family-based immigration. Family-sponsored immigration allows U.S. citizens and lawful permanent residents (“LPRs”) to file visa petitions on behalf of certain qualifying alien relatives. The Immigration and Nationality Act (“INA”) limits the total number of family-sponsored immigrant visas issued each year to 480,000, and directs that natives of any single foreign state may not receive more than seven percent of these visas. 8 U.S.C. §§ 1151(c), 1152(a)(2). The INA also establishes preference categories based on the relationship between citizens or LPRs and their alien relatives, and limits the number of family-sponsored immigrant visas that can be granted to members of each preference *1007 category. Id. § 1153(a). Unlike other types of family-sponsored visa applicants, children, spouses, and parents (i.e. “immediate relatives”) of U.S. citizens are not subject to the annual visa limits. Id. § 1151(b) (2) (A) (i).
For non-immediate relatives of citizens, the INA establishes the following family visa preference categories:
FI: Unmarried sons and daughters of U.S. citizens
F2A: Spouses and children of LPRs
F2B: Unmarried sons and daughters of LPRs
F3: Married sons and married daughters of U.S. citizens
F4: Brothers and sisters of U.S. citizens
Id. § 1153(a).
After a U.S. citizen or LPR files a visa petition on behalf of a' relative, USCIS determines if a qualifying relationship exists between the citizen or LPR petitioner and the alien relative who is the primary beneficiary. If so, USCIS puts the beneficiary “in line” in the appropriate visa category. The beneficiary’s place in line is determined by the date the petition is filed, which is known as the “priority date.” Due to statutory limits for each visa category and a substantial backlog, it may be many years before a petition’s priority date becomes “current,” meaning that a visa is available for the beneficiary named in the petition. See, e.g., U.S. Dep’t of State, Visa Bulletin, August 2012, available at http://www.travel.state.gov/visa/ bulletin/bulletin_5749.html (showing delays for members of all visa categories, including waits of over 10 years for nationals of several countries in certain categories).
A petition can also include the spouse or children of the primary beneficiary. The primary beneficiary’s spouse or children may then receive derivative visas at the same time that the primary beneficiary receives a visa. 8 U.S.C. § 1153(d) (“A spouse or child ... shall ... be entitled to the same status, and the same order of consideration provided in the respective subsection, if accompanying or following to join, the spouse or parent.”). The INA defines a “child” as an unmarried person under the age of twenty-one. 8 U.S.C. § 1101(b)(1). The primary beneficiary’s son or daughter can only receive a derivative visa if he or she is under twenty-one when the parent’s priority date becomes current. Often children who qualify for derivative visas at the time a petition is filed on their parent’s behalf are over the age of twenty-one by the time their parent receives the visa, and therefore may not immigrate to the United States with their parent. This is referred to as “aging out” of visa eligibility. Aging out also affects children who are the primary beneficiaries of F2A petitions, as they are no longer eligible for an F2A visa (for spouses and children of LPRs) once they turn twenty-one. Because some delays are many years long, children may age out even if they were very young when a petition was filed on their parent’s behalf.
II. The Child Status Protection Act
In 2002, Congress passed the Child Status Protection Act (“CSPA”). Pub.L. No. 107-208, 116 Stat. 927 (2002). This appeal concerns a provision of the CSPA entitled “Rules for determining whether certain aliens are children,” codified at 8 U.S.C. § 1153(h).[1] Subsection (h) addresses two *1008 sources of delay that can cause a beneficiary to age out of child status: (1) USCIS processing delays and (2) the wait times between USCIS’s approval of a visa petition and when a visa becomes available. Three parts of subsection (h) are relevant to our discussion.
The first paragraph of subsection (h) addresses the more minor delay that occurs while USCIS processes a visa application. 8 U.S.C. § 1153(h)(1). Subsection (h)(1) establishes the method to determine an alien’s age “[f]or purposes of subsections (a)(2)(A) and (d) [of § 1153],” which respectively address F2A visas (for the children of LPRs), id. § 1153(a)(2)(A), and derivative visas (for the children of primary beneficiaries), id. § 1153(d). Subsection (h)(1) provides that for purposes of determining if a visa applicant qualifies as a child, the alien’s “age” is his age on the date the visa becomes available minus “the number of days in the period during which the applicable petition” was pending after being filed. Id. § 1153(h)(1). Subsection (h)(1) thus ensures that an alien does not lose “child” status due to administrative delays in the processing of his parent’s visa petition.
Subsection (h)(2) defines the kinds of visa petitions to which the age-reduction formula in subsection (h)(1) applies. Id. § 1153(h)(2). Subsection (h)(2)(A) identifies F2A petitions, which are for children of LPRs. Id. § 1153(h)(2)(A). Subsection (h)(2)(B) identifies all other categories of visas for which a child may be a derivative beneficiary (family, employment, and diversity-based visa petitions). Id. § 1153(h)(2)(B).
Subsection (h)(3), the provision at issue in this appeal, grants alternative relief to aliens who are still determined to be twenty-one or older after calculating their age pursuant to the age reduction formula in subsection (h)(1). It states: “If the age of an alien is determined under [subsection (h)(1) ] to be 21 years of age or older for the purposes of subsections (a)(2)(A) [children of LPRs] and (d) [derivative beneficiaries], the alien’s petition shall automatically be converted to the appropriate category and the alien shall retain the original priority date issued upon receipt of the original petition.” Id. § 1153(h)(3). In other words, subsection (h)(3) requires that when aliens age out of child status *1009 for purposes of their original petition, their applications be automatically converted to the new appropriate category for adults. Additionally, it enables such aliens to retain the priority date assigned to their original petition. The effect of this older priority date is that the beneficiary is placed at or near the front of the visa line, and a visa would likely be available immediately or soon. Without this automatic conversion and priority date retention, the alien will have to go to the back of the line for the new category, and might wait many more years for a visa.
The question presented in this appeal is whether the automatic conversion and date retention benefits provided by subsection (h)(3) apply only to aged-out F2A petition beneficiaries, or whether they also apply to derivative beneficiaries of the other family visa categories.
III. Matter of Wang
The BIA answered this question in Matter of Wang, 25 I. & N. Dec. 28 (2009). The BIA held that unlike subsections (h)(1) and (h)(2), “which when read in tandem clearly define the universe of petitions that qualify for the ‘delayed processing formula,’ the language of [subsection (h)(3) ] does not exprpssly state which petitions qualify for automatic conversion and retention of priority dates.” Id. at 33. Based on this observation alone, the BIA found the statute ambiguous and turned to the Department of Homeland Security’s past regulatory practice and the CSPA’s legislative history. Id.
The BIA noted that “the phrase ‘automatic conversion’ has a recognized meaning” in immigration regulations. Id. at 34. According to the BIA, the term “conversion” has consistently meant that a visa petition converts from one visa category to-another without the need to file a new petition, and priority date retention has always applied only to subsequent visa petitions filed by the same petitioner. Id. at 34-35. The BIA offered several examples. Under 8 C.F.R. § 204.2(i)(3), if an LPR petitioner becomes a citizen, his adult son or daughter’s visa petition automatically converts from an F2B petition (for adult sons and daughters of LPRs) to an FI petition (for adult sons and daughters of citizens), and retains its original priority date. In this case, the identity of the petitioner remains the same. Additionally, 8 C.F.R. § 204.2(a)(4) allows an aged-out derivative beneficiary of an F2A spousal petition to retain his priority date as long as the original petitioner (his parent) submits an F2B visa petition on his behalf. Again, the petitioner remains the same. Wang, 25 I. & N. Dec. at 35. The BIA assumed that when Congress enacted subsection (h)(3), it understood past usage of these regulatory terms. Id.
The BIA also surveyed the legislative history of the CSPA and concluded that “there is no indication in the statutory language or legislative history of the CSPA that Congress intended to create a mechanism to avoid the natural consequence of a child aging out of a visa category because of the length of the visa line.” Id. at 38. Finding no indication that Congress attempted to “expand on the historical application of automatic conversion and retention of priority dates for visa petitions,” the BIA declined “to read such an expansion into the statute.” Id.
Under the BIA’s interpretation of subsection (h)(3), only subsequent visa petitions that do not require a change of petitioner may convert automatically to a new category and retain the original petition’s priority date. Automatic conversion and priority date retention would thus be only available to F2A petition beneficiaries, including primary child beneficiaries and derivative beneficiaries of F2A spousal pe *1010 titions. This is because these aged-out beneficiaries may become primary beneficiaries of an F2B petition filed by the same petitioner.
IV. Factual background
Appellants’ cases illustrate the question before us. Rosalina Cuellar de Osorio’s citizen mother filed a petition for an F3 visa (for a married daughter of a citizen) on her behalf in May 1998. Cuellar de Osorio’s son, who was then thirteen, was listed on the petition as a derivative beneficiary. Cuellar de Osorio’s visa was approved in June 1998, but her priority date did not become current until November 2005. By then, her son was twenty-one and as a result was ineligible for a derivative visa. Cuellar de Osorio became an LPR and immigrated to the United States in August 2006. In July 2007, Cuellar de Osorio filed an F2B petition for her son, now the adult son of an LPR, and requested that he retain the May 1998 priority date of her original F3 petition in which he had been named a derivative beneficiary. USCIS did not grant priority date retention, so Cuellar de Osorio’s son was placed in the back of the F2B line, requiring him to wait several more years for a visa. Cuellar de Osorio and several other similarly situated petitioners sued USCIS. Deferring to the BIA’s decision in Matter of Wang, under which the plaintiffs were not entitled to automatic conversion and priority date retention, the district court granted summary judgment to USCIS.
Teresita Costelo was the beneficiary of an F3 visa petition filed by her citizen mother in January 1990. Costelo’s two daughters, then aged ten and thirteen, were listed as derivative beneficiaries. By the time Costelo received her visa in 2004, both daughters were over twenty-one. Costelo immigrated and became an LPR, filed F2B petitions for her daughters, and requested retention of the 1990 priority date of the prior F3 visa petition.
Lorenzo Ong’s citizen sister filed an F4 petition on his behalf in 1981. At the time, Ong’s daughters were ages two and four. By the time Ong’s priority date became current in 2002, his daughters had aged out of derivative visa eligibility. Ong became an LPR and, in March 2005, he filed F2B petitions on behalf of his adult daughters and later requested retention of the 1981 priority date. USCIS did not respond to the priority date request. Costelo and Ong sued. The district court certified a class and granted the Government’s motion for summary judgment, again deferring to Matter of Wang.
V. Second and Fifth Circuit decisions
Since the BIA decided Matter of Wang, two of our sister circuits have considered subsection (h)(3). Though the Second and Fifth Circuits reached different conclusions as to the scope of subsection (h)(3)’s applicability, neither found the language of the CSPA ambiguous and therefore neither deferred to Matter of Wang. See Khalid v. Holder, 655 F.3d 363 (5th Cir.2011); Li v. Renaud, 654 F.3d 376 (2d Cir.2011).
The Fifth Circuit concluded that the unambiguous language of the CSPA extends automatic conversion and priority date retention to both F2A beneficiaries and aged-out derivative beneficiaries of other family-sponsored petitions. Khalid, 655 F.3d at 374-75. The Fifth Circuit held that because subsection (h)(2) explicitly encompasses both F2A visas and all derivative visas, and subsections (h)(1), (h)(2), and (h)(3) are interdependent, “the statute, as a whole, clearly expresses Congress’ intention about the universe of petitions covered by (h)(3),” and “there is no room for the agency to impose its own answer to the question.” Id. at 371 (internal quota *1011 tion marks omitted). The Fifth Circuit thus declined to defer to the BIA’s interpretation of subsection (h)(3), instead holding that automatic conversion is available for derivative beneficiaries of all family petitions, even when this necessitates a change in the identity of the petitioner.
In contrast, the Second Circuit held that an aged-out derivative beneficiary of an F2B petition was not entitled to automatic conversion and priority date retention when his mother filed an F2B petition that named him as a primary beneficiary. Li, 654 F.3d at 383. The Second Circuit concluded that the appellant’s petition could not be automatically converted because “the phrase conversion to an appropriate category refers to a petition in which the category is changed, but not the petitioner.” Id. at 384. According to the Second Circuit, a change in the petitioner forecloses the possibility of automatic conversion.
YI. Standard of Review
We review de novo a district court’s grant of summary judgment. Herrera v. U.S. Citizenship & Immigration Servs., 571 F.3d 881, 885 (9th Cir.2009). We review the BIA’s precedential decision interpreting a governing statute according to the principles of Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). INS v. Aguirre-Aguirre, 526 U.S. 415, 424, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999). Pursuant to the Chevron two-step analysis, we first ask if the statute is unambiguous as to the question at issue. Chevron, 467 U.S. at 842-43, 104 S.Ct. 2778. If it is, that is the end of our inquiry. Id. Only if the statute is ambiguous do we proceed to step two and ask “whether the agency’s answer is based on a permissible construction of the statute.” Id. at 843,104 S.Ct. 2778.
VII. Discussion
We begin by determining whether the CSPA is unambiguous as to whether the priority date retention and automatic conversion benefits in subsection (h)(3) extend to aged-out derivative beneficiaries of all family visa petitions. To determine if Congress has spoken unambiguously, we begin with the plain language of the statute itself. N. Cal. River Watch v. Wilcox, 633 F.3d 766, 772-73 (9th Cir.2011).
Subsection (h)(3) states: “Retention of priority date. If the age of an alien is determined under paragraph (1) to be 21 years of age or older for the purposes of subsections (a)(2)(A) and (d) of this section, the alien’s petition shall automatically be converted to the appropriate category and the alien shall retain the original priority date issued upon receipt of the original petition.” 8 U.S.C. § 1153(h)(3).
The Government argues that the language of subsection (h)(3) is ambiguous because, as the BIA held, it does not specify the petitions that qualify for automatic conversion and retention of priority dates. See Wang, 25 I. & N. Dec. at 33 (subsection (h)(3) “does not expressly state which petitions qualify for automatic conversion and retention of priority dates”). The Government is correct that subsection (h)(3) itself does not identify the kinds of visa petitions to which it applies, through either its own terms or by explicit reference to another definitional section. In contrast, subsection (h)(1), which establishes the age-reduction formula, states that it applies to the categories of visas named in subsection (h)(2). 8 U.S.C. § 1153(h)(1). In turn, subsection (h)(2) identifies both F2A beneficiaries (children of LPRs) and child derivative beneficiaries of all other visa categories. Id. § 1153(h)(2).
*1012 However, we do not assess subsection (h)(3) in a vacuum, but rather consider the text in its statutory context. FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000). The effect of subsection (h)(3) is explicitly contingent upon the operation of subsection (h)(1). The first words of subsection (h)(3) read “[i]f the age of an alien is determined under [subsection (h)(1) ] to be 21 years of age or older,” then the alien’s petition will be automatically converted to the appropriate category and he will retain the original priority date. 8 U.S.C. § 1153(h)(3). By subsection (h)(3)’s own terms, then, an alien is entitled to automatic conversion and priority date retention under subsection (h)(3) only if he is determined to be over twenty-one after applying the reduction calculation in subsection (h)(1). Id.; see also Khalid, 655 F.3d at 370 (“The benefits of automatic conversion and priority date retention are explicitly conditioned on a particular outcome from the formula in (h)(1)....”).
Subsection (h)(3) thus cannot function independently; it is triggered only when an application of subsection (h)(l)’s subtraction formula determines that the alien is over twenty-one. In turn, subsection (h)(1) explicitly applies to the visas described in subsection (h)(2), which include both F2A visas and derivatives of the other visa categories. Therefore, both aged-out F2A beneficiaries and aged-out derivative visa beneficiaries may automatically convert to a new appropriate category (if one is available), and the visa applicants may retain the priority date of the original petitions for which they were named beneficiaries. The plain language of the statute thus conclusively resolves the question before us.
Our interpretation is further bolstered by Congress’s use of the identical phrase “for [the] purposes of subsections (a)(2)(A) and (d)” in both subsections (h)(1) and (h)(3). This phrase refers to both F2A petitions for children (established by 8 U.S.C. § 1153(a)(2)(A)) and derivative visas for the children of primary beneficiaries of all visa categories (established by 8 U.S.C. § 1153(d)). It is undisputed that subsection (h)(1) applies to all derivative beneficiaries, and to accord a different meaning to the phrase as used in subsection (h)(3) violates the “presumption that a given term is used to mean the same thing throughout a statute.” Brown v. Gardner, 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994). We therefore read Congress’s repeated references to “subsections (a)(2)(A) and (d)” as expressions of its intent to extend automatic conversion and priority date retention to all family-sponsored derivative beneficiaries.
The existence of a circuit split does not itself establish ambiguity in the text of the CSPA. See, e.g., Roberts v. Sea-Land Servs., Inc., — U.S.—, 132 S.Ct. 1350, 182 L.Ed.2d 341 (2012) (holding that § 906(c) of the Longshore and Harbor Workers’ Compensation Act is unambiguous notwithstanding disagreement between the Fifth, Ninth, and Eleventh Circuits about its meaning); Mohamad v. Palestinian Auth., — U.S.—, 132 S.Ct. 1702, 182 L.Ed.2d 720 (2012) (holding that the term “individual” as used in the Torture Victim Protection Act unambiguously encompasses only natural persons despite disagreement among several Circuits); see also Reno v. Koray, 515 U.S. 50, 64-65, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995) (“A statute is not ‘ambiguous for purposes of lenity merely because’ there is ‘a division of judicial authority’ over its proper construction.”) (quoting Moskal v. United States, 498 U.S. 103, 108, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990)). Like the Fifth Circuit, we recognize that the Second Cir *1013 cuit concluded that a petition cannot be automatically converted where a change in petitioner is required, and we respectfully disagree. See Khalid, 655 F.3d at 373 (citing Li 654 F.3d at 383). The Second Circuit’s decision not to consider the interrelatedness of sections (h)(1), (h)(2) and (h)(3) does not undermine our conclusion that the statute, read as a whole, unambiguously answers the question before us.
The Government also contends the CSPA becomes ambiguous when its terms are applied to certain derivative beneficiaries. According to the Government, automatic conversion and priority, date retention cannot be practicably applied to F3 and F4 derivative beneficiaries because, for a category conversion to be automatic, it must involve the same petition and the same petitioner. Under this definition, automatic conversion would not be possible for aged-out derivative beneficiaries of F3 and F4 petitions because there is no qualifying relationship between the original visa petitioner and the aged-out beneficiary.
For an aged-out derivative beneficiary of an F3 or F4 petition, a subsequent petition will require a new petitioner. In the case of an F3 petition, the derivative beneficiary’s adult parent is the primary beneficiary, and the derivative beneficiary’s U.S. citizen grandparent is the petitioner. Once the derivative beneficiary turns twenty-one, he has no qualifying relationship with the original petitioner because a U.S. citizen cannot petition on behalf of his adult grandchild. For an F4 petition, the petitioner is a U.S. citizen, the primary beneficiary is the brother or sister of the citizen, and the derivative beneficiary is the child of the primary beneficiary and the niece or nephew of the petitioner. After the derivative beneficiary turns twenty-one, there is no qualifying relationship between a citizen uncle and his adult nephew. When the parents of aged-out derivative beneficiaries of F3 or F4 petitioners receive their visas and attain LPR status, they can file F2B petitions naming their now-adult sons and daughters as primary beneficiaries. In these F2B petitions, the identity of the petitioner changes from the beneficiary’s grandparent or aunt or uncle to his or her parent.[2]
The plain language of a statute controls except when “its application leads to unreasonable or impracticable results.” Valladolid v. Pac. Operations Offshore, LLP, 604 F.3d 1126, 1133 (9th Cir.2010) (internal quotation marks omitted). The language of the CSPA contains no indication that Congress intended the identity of the petitioner to be relevant. We do not find the fact that an automatically-converted visa petition may entail a new petitioner to be the kind of “rare and exceptional cireumstance[ ]” that renders the plain meaning of a statute impracticable. Demarest v. Manspeaker, 498 U.S. 184, 190, 111 S.Ct. 599, 112 L.Ed.2d 608 (1991) (“When we find the terms of a statute *1014 unambiguous, judicial inquiry is complete except in rare and exceptional circumstances.”). Plainly, a change in policy announced by the statute’s plain language cannot be impracticable just because it is a change or because it does not specify how exactly that change is to be implemented. Id. A statute that requires an agency to change its existing practices does not necessarily “lead to absurd or impracticable consequences.” Seattle-First Nat’l Bank v. Conaway, 98 F.3d 1195, 1197 (9th Cir.1996) (internal quotation marks omitted). We have no doubt that USCIS can develop a process for the F3 and F4 petitions of aged-out derivative beneficiaries to be automatically converted to F2B petitions, with new petitioners and new beneficiaries. The plain meaning of the CSPA controls.
In fact, the CSPA drafters seem to have contemplated that automatic conversion could require more than just a change in visa category. Subsection (h)(3) states that an alien’s petition is automatically converted and retains the date of the “original petition.” 8 U.S.C. § 1153(h)(3). This reference to an “original petition” suggests the possibility of a new petition, obtained either by editing the original petition or “automatically” requesting a new petition that identifies a new petitioner and primary beneficiary.[3]
Any alleged impracticability is further undermined by the reality that when an F2A petition is converted to an F2B petition for an aged-out beneficiary — the kind of change to which all parties agree subsection (h)(3) applies — USCIS must take some action to effectuate the change. And where a derivative beneficiary of an F2A petition ages out and requires a new F2B petition naming him as the primary beneficiary, the agency must change both the visa category and the identity of the primary beneficiary. These changes, which USCIS is apparently capable of handling, do not seem significantly less onerous or complicated than a visa conversion which entails a new petitioner.
We are also not convinced that any delay between the date a visa becomes available to the parent of an aged-out derivative beneficiary and the time when the parent obtains LPR status and can file an F2B petition renders automatic conversion impracticable. Until the parent of the aged-out son or daughter becomes an LPR, there is no category to which a petition for the son or daughter can immediately convert.[4] It is also true that if the parent’s visa is ultimately denied, there will be no category to which his aged-out son or daughter can convert. The lag time while a parent receives his visa and adjusts status, or the possibility that conversion for an aged-out derivative is never possible, present administrative complexities that may inform USCIS’s implementation *1015 of the CSPA. But these unresolved procedural questions do not create ambiguity in the text or result in a visa system “ ‘so bizarre that Congress could not have intended’ it.” Dep’t of Revenue of Or. v. ACF Indus., Inc., 510 U.S. 332, 347, 114 S.Ct. 843, 127 L.Ed.2d 165 (1994) (quoting Demarest, 498 U.S. at 191, 111 S.Ct. 599). Therefore, the plain language of the CSPA is not impracticable. It is the agency’s task to resolve these complications, not the court’s.
Moreover, the Government’s restrictive interpretation of subsection (h)(3) barely modifies the regulatory regime that existed at the time the CSPA was enacted. According to the Government, the CSPA makes priority date retention and automatic conversion available only to primary and derivative beneficiaries of F2A petitions. However, under 8 C.F.R. § 204.2(a)(4), which pre-dated the CSPA, an LPR is entitled to file an F2B petition on behalf of an aged-out son or daughter and retain the original priority date from the LPR’s original F2A petition. For such aliens, the only benefit of the CSPA over the current regulatory rule under the Government’s reading is automatic conversion, as the regulation requires that the LPR parent file a new F2B petition on behalf of his or her son or daughter to qualify for priority date retention. Thus, under the Government’s interpretation, subsection (h)(3)’s only effects are to extend automatic conversion and priority date retention to aged-out primary beneficiaries of F2A visa petitions, and automatic conversion to F2A derivative beneficiaries. Like the Fifth Circuit, “[w]e are skeptical that this meager benefit was all Congress meant to accomplish through subsection (h)(3), especially where nothing in the statute singles out derivative beneficiaries of second-preference petitions for special treatment.” Khalid, 655 F.3d at 374.
Additionally, 8 C.F.R. § 204.2(a)(4) explicitly requires that to qualify for priority date retention, the identity of the petitioner must remain the same, while the CSPA contains no such requirement. If Congress intended to limit automatic conversion to only subsequent petitions in which the petitioner remains the same, the regulations provided a clear example of the language it could have used. Congress’s decision not to track the regulatory language further suggests that the CSPA is not merely a codification of regulatory practice. See id. at 374 n. 9 (citing 8 C.F.R. § 204.2(a)(4)).
The parties and amici disagree about how our interpretation will affect different categories of visa petitioners and about which aliens most deserve the next available visas. The number of visas available is statutorily fixed and is far exceeded by demand. Accordingly, Congress’s decision to allow aged-out beneficiaries to retain their priority dates when they join new preference category lines will necessarily impact the wait time for other aliens in the same line. It is difficult to assess the equities of this result, but that is not our role. We “are vested with the authority to interpret the law; we possess neither the expertise nor the prerogative to make policy judgments.” Nat’l Fed’n of Indep. Bus. v. Sebelius, — U.S.—, 132 S.Ct. 2566, 2579, 183 L.Ed.2d 450 (2012).
The CSPA, “as a whole, clearly expresses Congress’ intention,” and we therefore do not defer to the BIA’s interpretation of subsection (h)(3). Dole v. United Steelworkers of Am., 494 U.S. 26, 42, 110 S.Ct. 929, 108 L.Ed.2d 23 (1990); see also Khalid, 655 F.3d at 371 (the CSPA “as a whole, clearly expresses Congress’ intention about the universe of petitions covered by (h)(3),” and “there is no room for the agency to impose its own answer to the question” (internal quotation *1016 marks omitted)). Automatic conversion and priority date retention are available to all visa petitions identified in subsection (h)(2). Because “the intent of Congress is clear, that is the end of the matter,” Chevron, 467 U.S. at 842, 104 S.Ct. 2778, and we do not consider past agency practice or legislative history. We join the Fifth Circuit in “giv[ing] effect to the unambiguously expressed intent of Congress.” Id. at 843,104 S.Ct. 2778.
The district court’s grants of summary judgment are reversed and these cases are remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.

. The CSPA states in relevant part:
(h) Rules for determining whether certain aliens are children
(1) In general
For purposes of subsections (a)(2)(A) and (d) of this section, a determination of whether an alien satisfies the age requirement in the matter preceding subparagraph
*1008 (A) of section 1101(b)(1) of this title shall be made using—
(A) the age of the alien on the date on which an immigrant visa number becomes available for such alien (or, in the case of subsection (d) of this section, the date on which an immigrant visa number became available for the alien’s parent), but only if the alien has sought to acquire the status of an alien lawfully admitted for permanent residence within one year of such availability; reduced by
(B) the number of days in the period during which the applicable petition described in paragraph (2) was pending.
(2)Petitions described
The petition described in this paragraph is—
(A) with respect to a relationship described in subsection (a)(2)(A) of this section, a petition filed under section 1154 of this title for classification of an alien child under subsection (a)(2)(A) of this section; or
(B) with respect to an alien child who is a derivative beneficiary under subsection (d) of this section, a petition filed under section 1154 of this title for classification of the alien's parent under subsection (a), (b), or (c) of this section.
(3) Retention of priority date
If the age of an alien is determined under paragraph (1) to be 21 years of age or older for the purposes of subsections (a)(2)(A) and (d) of this section, the alien's petition shall automatically be converted to the appropriate category and the alien shall retain the original priority date issued upon receipt of the original petition.
(4) Application to self-petitions
Paragraphs (1) through (3) shall apply to self-petitioners and derivatives of self-petitioners.

. For example, U.S. citizen Adele flies an F3 petition on behalf of her adult son Aron, and includes Aron’s daughter Naira as a derivative beneficiary. By the time Aron receives a visa, Naira is over twenty-one. Adele can no longer petition on Naira’s behalf, as there is no qualifying relationship between a grandmother and her adult granddaughter. Once Aron becomes an LPR, Aron may file an F2B petition for his daughter Naira.
Similarly, U.S. citizen Adele files an F4 petition for her sister Kristen, and includes Kristen's daughter Sandy as a derivative beneficiary. If Sandy is over twenty-one when Kristen receives her visa, Adele cannot petition for Sandy, because Adele cannot petition for her adult niece. Kristen may file an F2B petition for her daughter Sandy.
The question here is whether the original F3 or F4 petition should be automatically converted to an F2B petition, and if the F2B petition retains the priority date of the F3 or F4 petition.

. The "original petition” clause also contradicts the dissent’s assertion that § 1153(h)(3) is ambiguous because an F2B petition for an aged-out F3 or F4 derivative beneficiary could entail a new petition and petitioner. Dissent at 1017-19. The CSPA provides that a petition is to be automatically converted and is to “retain the original priority date issued upon receipt of the original petition.” 8 U.S.C. § 1153(h)(3). Therefore, notwithstanding the use of the word "conversion” in other parts of the INA, the CSPA expressly recognizes the possibility of automatic conversion of a subsequent petition. A new petition is not a "problem” in the plain meaning of the statute that renders the language ambiguous. See Dissent at 1019.

. For a derivative beneficiary, the benefits of § 1153(h) are triggered on “the date on which an immigrant visa number became available for the alien's parent.” 8 U.S.C. § 1153(h)(1)(A). Some time will elapse between the date a visa is available to the parent and the date the visa is approved (entitling the parent may file an F2B petition for the adult son or daughter).